638 A.2d 825

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. GAIL KOTTER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 19, 1993—Decided February 28, 1994.

216

Before Judges STERN, KEEFE and NEWMAN.

*Bernard J. Czech,* attorney for appellant (of counsel and on the brief).

*Fred DeVesa,* Acting Attorney General, attorney for respondent (*Richard W. Berg,* Deputy Attorney General, of counsel; *William F. Lamb,* Special Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant was indicted for aggravated manslaughter, *N.J.S.A.* 2C:11–4(a) (count one); aggravated assault, *N.J.S.A.* 2C:12–1b(1) (count two); assault by auto, *N.J.S.A.* 2C:12–1c (count three); aggravated assault, *N.J.S.A.* 2C:12–1b(2) (count four) and assault by auto, *N.J.S.A.* 2C:12–1c (count five). Count one dealt with the death of Meryl Wasserman; counts two and three related to Ralph Parillo, and counts four and five concerned Lynncaryl Shafer. Tried to a jury, defendant was convicted on all but the fourth count. As to the third count the jury found defendant caused "serious bodily injury," a fourth degree crime, but on count five it found only "bodily injury," a disorderly persons offense. She was also convicted of drunk driving at the time.

Defendant was sentenced to thirty years with a ten year period of parole ineligibility on count one. Count three was merged into count two and concurrent sentences were imposed on counts two and five.[1] Defendant appeals and argues:

POINT I  THE TRIAL COURT COMMITTED ERROR BY GRANTING THE STATE'S MOTION TO EXCLUDE THE TESTIMONY OF DR. ROTGERS ON THE ISSUE OF DIMINISHED CAPACITY.

POINT II  DEFENDANT WAS DENIED A FAIR TRIAL DUE TO THE BIAS AND PREJUDICE OF THE TRIAL JUDGE.

POINT III  DEFENDANT WAS DENIED A FAIR TRIAL DUE TO UNCORRECTED COMMENTS ON FLIGHT IN THE STATE'S SUMMATION.

POINT IV  THE CHARGE TO THE JURY WAS IN ERROR REGARDING THE CONCEPT OF RECKLESSNESS APPLICABLE TO AGGRAVATED MANSLAUGHTER AND THE LESSER INCLUDED OFFENSES (Plain Error).

POINT V  THE CHARGE TO THE JURY WAS IN ERROR REGARDING THE CONCEPT OF RECKLESSNESS APPLICABLE TO AGGRAVATED MANSLAUGHTER AND THE ELEMENT OF KNOWLEDGE OF SPECIFIC EXTENUATING CIRCUMSTANCES (Plain Error).

---

[1] The trial judge also sat as a municipal court judge for purposes of hearing the driving while intoxicated charge. *See State v. Muniz,* 118 *N.J.* 319, 571 *A.*2d 948 (1990). On the day defendant was sentenced, the judge found her guilty of drunk driving at the time of the accident. No issue is addressed to us concerning the procedure used.

POINT VI   THE CHARGE TO THE JURY WAS IN ERROR REGARDING
THE CONCEPT OF RECKLESSNESS APPLICABLE TO AGGRAVATED
ASSAULT AND THE ELEMENT OF KNOWLEDGE OF SPECIFIC EX-
TENUATING CIRCUMSTANCES (Plain Error).
POINT VII   DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE
AND WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION.

Our careful review of the record satisfies us that the issues raised
are without merit and do not warrant discussion except as herein-
after stated, *R.* 2:11–3(e)(2).   We reach our conclusion in light of
the overwhelming, and essentially uncontested, proofs that defen-
dant caused the accident and injuries for which she was indicted.

On August 1, 1989, at approximately 4:10 p.m., defendant struck
and killed Meryl Wasserman, then fifteen years old, who was
standing on the side of the road with her bicycle picking flowers.
After striking Ms. Wasserman, the pickup truck defendant was
driving returned to the road, and crossed the roadway into
oncoming traffic, where it struck the vehicles in which the other
victims were riding.   The vehicle travelled about 500 feet before
coming to a stop.   Defendant was found to have had a blood
alcohol reading of .17 shortly after the accident, together with .63
micrograms of prozac and .16 micrograms of xanax per milliliter of
blood.

The principal issue on this appeal flows from the trial judge's
ruling that defendant could not offer the testimony of a psycholo-
gist, Dr. Frederick Rotgers, in support of a diminished capacity
defense.   The judge concluded that the essence of testimony,
proffered through Dr. Rotgers at an *Evid.R.* 8 hearing, was
relevant only to the defense of intoxication which could only
excuse crimes requiring purposeful or knowing conduct.   *See
N.J.S.A.* 2C:2–8b.   As defendant was charged only with crimes
requiring reckless culpability,[2] the judge determined that defen-

---

[2] There is a purposeful and knowing culpability alternative for second degree
aggravated assault, *see N.J.S.A.* 2C:12–1b(1), but defendant was indicted in
counts two and four with "recklessly" causing serious bodily injury "under
circumstances manifesting extreme indifference to the value of human life."
The judge charged only on that basis.

dant could not introduce the evidence in support of a diminished capacity "defense" under *N.J.S.A.* 2C:4-2. That provision of the Code of Criminal Justice provided at the time of trial, as it does now, that:

> Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense. In the absence of such evidence, it may be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense.

During trial defendant's treating psychiatrist, Dr. John Robert Blake, testified for the State [3] that prior to the accident he had diagnosed defendant "as having panic disorders with agoraphobia." He prescribed xanax for the condition. The doctor "added a diagnosis of alcohol abuse" when he discovered defendant "abuse[d]" alcohol. The doctor told defendant not to mix alcohol with medication. According to Dr. Blake, the combination of xanax and alcohol "affect[s] the brain in a dramatically more marked way than either one of the substances would on their own," and he was sure from discussions with defendant that "she was aware that alcohol would exacerbate and make the use of her medications very dangerous." He gave defendant "warnings ... that mixing the medications with alcohol can be potentially dangerous and is really forbidden." Nevertheless, defendant "denied that she was drinking alcohol in a way that was a problem." The doctor endeavored to develop a treatment plan which took the impact of defendant's alcoholism into account and commenced to introduce prozac in lieu of xanax. Nevertheless, defendant remained on xanax which "multipl[ied] the [negative] effect of [the] alcohol" in affecting her judgment and put her "at higher risk for engaging in dangerous activities." On the other hand, according to Dr. Blake, defendant was "able to perceive risks and consciously disregard them," suffered no disorder that affected the "higher

---

[3] The jury was advised that "any privilege that the defendant may have with regard to confidential communications between the doctor and the defendant has been waived." Defendant had filed a malpractice action against Dr. Blake.

functioning part of her brain" and could "assess her own behavior and appreciate the consequences."

Defendant presented Dr. Rotgers, a clinical psychologist, at an *Evid.R.* 8 hearing.[4]   Rotgers concluded that based on his "evaluation of her" and defendant's blood alcohol and medication levels at the time of the accident, defendant was "severely cognitively impaired at the time by virtue of being intoxicated, highly intoxicated with alcohol and alprazolam, which is the prescription drug Xanax."   He noted she also had prozac in her system and, as a result of the combination, was "severely, severely cognitively impaired."   Dr. Rotgers noted that the blood alcohol reading of .17 was "very high in and of itself, and in combination with the Xanax . . ., the level of impairment was far beyond what it would have been simply had she been intoxicated with alcohol" and was equivalent to a .20 or .25.

Dr. Rotgers explained that "because of the combination of alcohol and Xanax" defendant suffered from "tunnel vision," and in that condition "she was just unable to think about what the risks might have been."   The doctor further stated that the "synergistic effect" of the combination of alcohol and xanax prevented defendant from perceiving the risk of driving in her "highly intoxicated" state and consciously avoiding it.   In response to a question from the judge at the end of the hearing, Dr. Rotgers also noted that "but for the panic attack—panic disorder and agoraphobia, [defendant] wouldn't have been drinking."   He stated that drinking was defendant's way of "reliev[ing] the pressure of" her agoraphobia and panic disorder and that she found the combination of alcohol and xanax "dampened the anxiety" more than xanax alone.

Dr. Rotgers acknowledged, however, that defendant "implemented" that remedy "on her own."   He further explained that because defendant was "alcohol dependent" her drinking began "to get out of control" and she was unable to stop, although she perceived the drinking "subjectively as [having] a therapeutic

---

4 Now *N.J.R.E.* 104(a).

effect." In summary, Dr. Rotgers testified that defendant was "highly intoxicated" and based on the aggregate of facts and conditions was "severely impaired" at the time of the accident. But he was not certain whether this impairment met the "legal criterion for diminished capacity."

Defendant first contends that the convictions must be reversed because Dr. Rotgers' testimony was excluded and the defendant was precluded from asserting a diminished capacity defense. Defendant contends that although defendant's panic disorder and agoraphobia did not alone constitute mental disease or defect which negated the requisite culpability, the combination of defendant's ingestion of xanax, prozac and alcohol taken to combat her medical condition was of such a nature that it rendered her incapable of perceiving the risk of driving in her "highly intoxicated" state, which precipitated the accident that resulted in Meryl Wasserman's death. Specifically, defendant argues:

> In summary and paraphrased, Dr. Rotgers testified that the combination of diagnosed conditions caused defendant to consume Xanax, Prozac and Alcohol on August 1, 1989, further the conditions and substances in combination negated defendant's *cognitive abilities* prior to her deciding to drive the motor vehicle, the operation of which in turn caused the death of Meryl Wasserman. Dr. Rotgers held firm to a totality of conditions and circumstances analysis in support of his expert opinion that Gail Kotter's *cognitive abilities* to assess risk, evaluate her ability to drive and in fact perform the activities necessary to drive a motor vehicle were grossly impaired. He refused the [c]ourt's urging to isolate the cause and effect to a singular mental condition.

We will assume that defendant's contentions are directed to the other convictions as well as the aggravated manslaughter.

█ We agree with defendant that a diminished capacity charge must be given to the jury when there is evidence of a mental disease or defect that negates the state of mind required to commit the offense or impacts on a defendant's ability to form the requisite culpability. *State v. Galloway,* 133 *N.J.* 631, 647, 628 *A.*2d 735 (1993); *State v. Moore,* 122 *N.J.* 420, 432–37, 585 *A.*2d 864 (1991); *State v. Pitts,* 116 *N.J.* 580, 562 *A.*2d 1320 (1989); *State v. Carroll,* 242 *N.J.Super.* 549, 577 *A.*2d 862 (App.Div.1990), *certif. denied,* 127 *N.J.* 326, 604 *A.*2d 600 (1991). This is true even

with respect to a case in which only "reckless" conduct suffices to convict. *See State v. Juinta,* 224 *N.J.Super.* 711, 724–25, 541 *A.*2d 284 (App.Div.), *certif. denied,* 113 *N.J.* 339, 550 *A.*2d 453 (1988).

In asserting that the defense produced enough evidence to warrant the presentation of proofs and instructions on diminished capacity, defendant relies upon *State v. Galloway, supra,* 133 *N.J.* at 631, 628 *A.*2d 735. In *Galloway* the Appellate Division had concluded that defendant, who had been diagnosed as having a "personality disorder," could not be considered as having "a mental disease or defect." . We had further determined that a "personality disorder" and the loss of impulse control "was not the type of mental disease that had been recognized by our law as diminishing mental capacity by affecting cognitive faculties." *Id.* at 641, 628 *A.*2d 735.

The Supreme Court, however, concluded that the diagnosis did not control and that "[f]orms of psychopathology other than clinically-defined mental diseases or defects may affect the mental process · and diminish cognitive capacity, and therefore may be regarded as a mental disease or defect in the statutory or legal sense" within the meaning of *N.J.S.A.* 2C:4–2. *Id.* at 643, 628 *A.*2d 735. The Supreme Court further determined that whether "a condition constitutes a mental disease or defect is one to be made in each case by the jury after the court has determined that the evidence of the condition in question is relevant and sufficiently accepted within the psychiatric community to be found reliable for courtroom use." *Ibid.* The fact that the condition did not fit within a specific category within the *Diagnostic and Statistical Manual of Mental Disorders (DSM Manual)* does not control and that "[t]he formal characterization of the defendants' mental condition was not critical" to the diminished capacity defense. *Id.* at 645, 628 *A.*2d 735. In essence, the *Galloway* Court held

that all mental deficiencies, including conditions that cause a loss of emotional control, may satisfy the diminished-capacity defense if the record shows that experts in the psychological field believe that kind of mental deficiency can affect a person's cognitive faculties, and the record contains evidence that the claimed

deficiency did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime.

[*Id.* at 647, 628 *A.*2d 735.]

Hence, if the "evidence is sufficient to allow a jury to consider and determine whether defendant suffered from a mental disease or defect that impaired his cognitive capacity and prevented him from forming the intent" or culpability required for the act, the issue is for the jury to decide. *Id.* at 649, 628 *A.*2d 735.

■ However, we agree with the trial judge that, in light of *N.J.S.A.* 2C:2–8b, a charge on diminished capacity would have been inappropriate in this case. The judge stated that if the defense were "allowed, it would contravene the provisions of 2C:2–8(b). In short, it would serve as nothing more than an intoxication defense which is prohibited by statute." The judge added that alcohol abuse would become a defense to any "reckless manslaughter or a death by auto charge where drinking was involved if the defendant at one time suffered some type of emotional disease that caused that person to begin to drink." In essence, the judge concluded that defendant was endeavoring to assert "an intoxication defense that the legislature felt should be precluded in reckless culpability cases."

Dr. Rotgers did not testify at the *Evid.R.* 8 hearing that defendant's panic attack disorder or mental condition affected her ability to form the requisite state of mind or culpability, or even affected her cognitive faculties at the time. Rather, Dr. Rotgers indicated that the ingestion of prescribed drugs taken for the mental condition together with the drinking of alcohol combined to impair the defendant's cognitive faculties. It was the opinion of the defense expert that the "diagnosed condition" required defendant "to consume" drugs which when taken with alcohol caused her to "negate ... cognitive abilities." Thus, it was the combination of the alcohol and medication, and not the mental condition, which caused defendant's "highly intoxicated" state and affected her perceptions. In essence, defendant's faculties would not have been impaired "but for" the alcohol.

It is true that Dr. Rotgers indicated that defendant's mental condition led her to drink, and to drink excessively in light of the medication. It is also true that the medication was prescribed because of a mental condition. But while doctors need not conclude that defendant suffers from a particular condition or disorder, and no *DSM* Manual diagnosis is necessary to support the defense, we deal with a legal question concerning "whether defendant suffered from a mental disease or defect." *N.J.S.A.* 2C:4–2.[5] We emphasize that this is not a case where defendant's cognitive faculties were limited exclusively because of medication prescribed for a medical condition. While Dr. Rotgers did note that defendant's alcohol abuse was psychologically related to her medical condition and her psychological needs, we cannot conclude that the Legislature intended to have the diminished capacity "defense" erode the limited impact of the intoxication defense which does not excuse reckless culpability. Dr. Rotgers did not suggest pathological intoxication. Indeed, the pathological intoxication defense was not asserted, and defendant does not now suggest its application. *See N.J.S.A.* 2C:2–8d, e(3). Dr. Rotgers did not suggest that defendant's cognitive faculties were impaired by any pathological or psychological condition—or even exclusively by her medication for her psychological condition—only by a combination of the medicine prescribed for her mental condition and the alcohol defendant consumed. Whether or not defendant's drinking was "voluntary" as a matter of fact, it was "self-induced" as a matter of law (*see N.J.S.A.* 2C:2–8e(2)), and "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial." *N.J.S.A.* 2C:2–8b.[6]

---

[5] While the medical expert's legal conclusion does not control, we note that Dr. Rotgers declined to conclude that defendant's condition resulted in the "legal criterion for diminished capacity."

[6] The trial judge instructed the jury that intoxication was not a defense to the crimes charged.

■ We therefore agree with the trial judge that permitting the "defense" of diminished capacity in these circumstances involving allegations of reckless misconduct would be inconsistent with legislative intent. *Cf. State v. Hammond,* 118 *N.J.* 306, 571 *A.*2d 942 (1990) (involuntary intoxication not a defense to driving while intoxicated). In *Galloway,* the Supreme Court did not consider an issue involving intoxication or alcohol abuse, and we agree with the trial judge that if the proofs here justified a defense of diminished capacity, we would be approving a complete defense to a crime premised on reckless culpability, notwithstanding the fact that the Legislature stated that self-induced (non-pathological) intoxication cannot excuse such wrongdoing. *See N.J.S.A.* 2C:2–8b. To the contrary, the Legislature has provided that "[i]ntoxication does not, in itself, constitute mental disease within the meaning of chapter 4," which includes *N.J.S.A.* 2C:4–2. *See N.J.S.A.* 2C:2–8c. Thus, while intoxication may in other circumstances combine with a defendant's mental condition to prevent the defendant from having the requisite state of mind and proofs may be admissible to raise that issue, if a charge were given to the jury on diminished capacity in this case, "self-induced" ingestion of alcohol would provide a defense to a crime involving reckless culpability, notwithstanding the significant impact of the alcohol. As Dr. Rotgers stated that defendant's ingestion of alcohol on top of xanax had a "synergistic effect" which prevented her from realizing the risk involved and consciously avoiding it, his testimony essentially supported an intoxication defense under *N.J.S.A.* 2C:2–8b. However, that defense relates only to crimes involving purposeful or knowing culpability. *State v. Warren,* 104 *N.J.* 571, 575–77, 518 *A.*2d 218 (1986); *State v. Cameron,* 104 *N.J.* 42, 52, 514 *A.*2d 1302 (1986); *State v. Juinta, supra,* 224 *N.J.Super.* at 722–23, 541 *A.*2d 284. Here, defendant was not charged with such a crime. Rather, she was charged with aggravated manslaughter, reckless aggravated assault, and assault by auto, all of which involve only reckless culpability.

We do not conclude that the State did not have the burden of proving the requisite culpability, and the judge charged the jury

that it did. The difficulty in this case, unlike others, is that we deal facially with a ruling concerning the admissibility of evidence, not with the failure to give a diminished capacity instruction to the jury based on the evidence admitted. *See State v. Moore, supra*, 122 *N.J.* at 434–37, 585 *A.*2d 864 (error in instructions requires reversal); *State v. Pitts*, 116 *N.J.* 580, 592, 562 *A.*2d 1320 (1989) (evidence insufficient to warrant a diminished capacity instruction); *State v. Carroll*, 242 *N.J.Super.* 549, 560–61, 577 *A.*2d 862, *certif. denied*, 127 *N.J.* 326, 604 *A.*2d 600 (1991) (erroneous instruction found to be harmless because of insufficient proofs to support the defense); *see also State v. Watson*, 261 *N.J.Super.* 169, 178–181, 618 *A.*2d 367 (App.Div.1992) (erroneous instruction harmless because Dr. Rotgers' testimony which included consideration of impact of alcohol did not support finding of diminished capacity as a matter of law).

We nevertheless agree with the trial judge here that the evidence submitted at the *Evid.R.* 8 hearing would not have warranted a diminished capacity charge and that Dr. Rotgers' testimony in furtherance of a diminished capacity defense was inadmissible.[7]

■ Defendant attacks the judge's instruction on the meaning of reckless conduct. With respect to the reckless culpability requirement for an aggravated manslaughter, reckless manslaughter and death by auto conviction (charged as lesser included offenses on count one), the judge stated:

> You'll see as I define these three statutes that the reckless conduct required by the aggravated manslaughter statute is qualitatively greater than the recklessness required to support a reckless manslaughter charge, and the reckless conduct contemplated by reckless manslaughter is *quantitatively* greater than the recklessness contemplated by the death by auto statute. (Emphasis added.)

With respect to the death of Ms. Wasserman as alleged in count one, the judge subsequently instructed the jury, that to convict

---

[7] The judge did not preclude Dr. Rotgers from testifying. Rather, the judge held that he could testify with limitations on giving any opinion about Dr. Blake's perceived malpractice and defendant's diminished capacity.

defendant of aggravated manslaughter, it must find that "the defendant acted recklessly ... that defendant was aware of and consciously disregarded the risk of probably causing death and that the risk she disregarded was a substantial and unjustifiable one." The judge later compared this to "[t]he degree of risk in reckless manslaughter [which] is a mere possibility of death." The judge noted the distinction between the "probable result" required for aggravated manslaughter and "possibility of death" required to prove simple manslaughter several times. The judge also emphasized "the additional element that [the] death be caused under circumstances manifesting extreme indifference to [the value of] human life" to sustain an aggravated manslaughter.

Defendant argues that the terms "probable" and "possible" are "statistical terms of quantitative difference (Webster's Unabridged Dictionary) [and] are not qualitatively different." Hence the defendant charges that the charge was wrong and inconsistent. There was no objection to the charge in this regard, and use of the words "probable" and "possible" in terms of defining the difference between aggravated and simple manslaughter has been recognized in the law. *See State v. Curtis*, 195 *N.J.Super.* 354, 366–67, 479 *A.*2d 425 (App.Div.), *certif. denied*, 99 *N.J.* 212, 491 *A.*2d 708 (1984). *See also State v. Clausell*, 121 *N.J.* 298, 332, 580 *A.*2d 221 (1990). The judge also noted the distinction between recklessness required for manslaughter and the lesser offense of death by auto. *See State v. Jiminez*, 257 *N.J.Super.* 567, 574–84, 608 *A.*2d 996 (App.Div.1992). We are therefore satisfied that the jury was properly instructed in the charge as a whole and that the jury understood the instructions. Hence, we find no plain error in the judge's instructions warranting reversal.

Defendant argues that the sentence imposed is manifestly excessive. She challenges both the increase in the presumptive term from twenty to thirty years, *see N.J.S.A.* 2C:11–4c, 44–1f(1)(a), and imposition of a period of parole ineligibility. The judge gave a comprehensive statement of reasons and concluded "that the aggravating factors substantially outweigh[ed] the mitigating" and

expressly applied those reasons to increase the presumptive term and impose the parole disqualifier.

The question before us is not whether we would have increased the presumptive term or whether we would have imposed a parole disqualifier. Rather, the only issue properly before us is whether the sentencing judge exercised his discretion "in accordance with the principles set forth in the Code." *State v. Roth*, 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984). If there is a basis in the record for the findings of aggravating and mitigating factors and the balancing thereof, and the judge applied the correct sentencing guidelines and reached a conclusion that could "have reasonably been made upon weighing of the relevant factors" (*Id.* at 366, 471 *A.*2d 370), there is no basis for our interference. Moreover, we cannot "second-guess" the sentencing judge (*Id.* at 365, 471 *A.*2d 370), and must uphold the sentence even if there is "room for reasonable disagreement" as to whether it is the appropriate one. The sentence is facially severe, particularly by virtue of the imposition of the discretionary parole ineligibility term for defendant's first criminal offense. However, about two weeks after this transaction defendant was again arrested (and subsequently convicted) for drunk driving and having an open container of alcohol in her motor vehicle, notwithstanding the events giving rise to this prosecution. Moreover, concurrent sentences were imposed irrespective of the fact there were separate victims, and we deem that factor to be significant with respect to the propriety of the aggregate sentence. In fact, the judge specifically indicated that he was not imposing consecutive sentences because he imposed the ineligibility term. The aggregate specific term may not be much higher than what might have been imposed in the form of consecutive sentences, and the ineligibility term was only one-third of the specific term imposed. In any event, given our scope of review, we find no basis for interfering with the sentence imposed.

We do not believe that the other issues raised by defendant warrant discussion. *R.* 2:11–3(e)(2).

The judgment of conviction is affirmed.