SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. Eugene C. Baum  (A-107-13) (073056)

**Argued November 10, 2015 – Decided February 8, 2016**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal arising from a prosecution for aggravated manslaughter and death by auto, the Court considers the trial court's jury instructions, and whether the instruction on mental disease or defect effectively negated defendant's diminished capacity defense by blending the law on self-induced intoxication and mental disease or defect.

While driving from his residence to his mother's home on the night of April 20, 2006, defendant Eugene Baum struck and killed two teenage girls who were walking in a bike lane of a major thoroughfare in Kinnelon.  The responding officers found two beverage containers in defendant's car, one of which contained a liquid that was 7.7 percent ethyl alcohol (15 proof).  Defendant could not maintain his balance, his speech was slurred, and he smelled strongly of alcohol.  He told the police that he thought he had hit a deer, but was not sure.

At the time of the incident, defendant's blood alcohol level was determined to be between .327 and .377, four times the legal limit.  Defendant had taken a prescribed anti-depressant the night before, and Librium that morning to control his symptoms of alcohol withdrawal.  Although he knew that Librium would intensify his intoxication, defendant stated that he consumed more than two alcoholic beverages, but did not know how much he actually consumed, before driving to his mother's home.  Defendant stated that he drank because he is an alcoholic, and has struggled with alcoholism for approximately seven years.

Defendant argued at trial that he lacked the mental capacity to act recklessly because of his intoxication, which he claimed was involuntary due to his mental diseases or defects of alcoholism and depression.  Defendant presented expert testimony confirming his chronic alcoholism, and concluding that the Librium in his system severely impaired his ability to think or reason and that his drinking was automatic behavior rather than the product of conscious thought.  The State's expert testified that alcohol consumption is a conscious, goal-directed behavior. At the charge conference, defense counsel argued that it would be improper for the court to characterize defendant's intoxication as self-induced because the net effect of that statement would be to negate diminished capacity. Counsel requested that the court separately and distinctly outline for the jury the concepts of self-induced intoxication and diminished capacity.  The trial judge stated that he would give the self-induced intoxication charge following the mental disease or defect instruction, and defense counsel did not object.

The jury found defendant guilty of two counts of first-degree aggravated manslaughter and two counts of second-degree death by auto.  Defendant was sentenced to two consecutive twenty-year prison terms subject to eighty-five percent parole ineligibility.  The Appellate Division affirmed defendant's conviction, but remanded for resentencing based on a reevaluation of the aggravating factors relied on by the sentencing court.  The panel found that the court's instruction regarding mental disease or defect properly incorporated the exculpatory significance of defendant's expert testimony on the relationship between defendant's intoxication and mental disease.  This Court granted limited certification. 220 N.J. 37 (2014).

**HELD:** The jury instructions, taken as a whole, are neither ambiguous nor misleading because they did not blend, and explicitly distinguished, the concepts of mental disease or defect and self-induced intoxication, in charges that reflected an accurate statement of the law.  The sequence of instructions given by the court, addressing the diminished capacity defense followed by the self-induced intoxication instruction, did not negate the diminished capacity defense.

1.  Appropriate and proper charges are essential for a fair trial.  The trial court must give a comprehensible

1

explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find. Erroneous instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant. Because defendant objected to the proposed diminished capacity instruction, the Court applies a harmless error standard. The Court must therefore determine whether the charge as a whole sets forth accurately and fairly the controlling principles of law, or whether it is misleading, and, if so, whether this error was clearly capable of producing an unjust result. (pp. 12-14)

2. The Criminal Code allows evidence of a mental disease or defect to negate an essential mental element of the crime, and is therefore relevant to the State's burden in proving the offenses charged. A diminished capacity defense requires evidence demonstrating: a) a mental disease or defect that interferes with cognitive ability sufficient to prevent or interfere with the formation of the requisite intent or mens rea; and b) that the claimed deficiency did affect defendant's cognitive capacity to form the requisite mental state. Whether a condition constitutes a mental disease or defect is a question for determination by the jury after the court finds that the evidence of the condition in question is relevant and accepted in the psychiatric community so as to be reliable for use in litigation. (pp. 14-16)

3. Evidence of intoxication may be used to disprove that a defendant acted purposely or knowingly. However, voluntary or self-induced intoxication, defined in N.J.S.A. 2C:2-8(e)(2), is immaterial to recklessness as an element of an offense. (pp. 16-17)

4. Defendant's state of mind was at issue in light of the requirement that the State show recklessness on the charge of aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1), and knowing and voluntary conduct under the death by auto charge. Defendant contended that he could not have had the requisite mental state because he was involuntarily intoxicated due to the mental diseases or defects of alcoholism and depression. Defendant asserted that his intoxication should have been considered as evidence of his mental diseases or defects to establish a diminished capacity defense. The State argued that defendant's intoxication and driving on the shoulder of the road was evidence of defendant's recklessness in causing the victims' deaths. (pp. 18-19)

5. The Court finds no error in the jury charge. The trial court's instruction on self-induced intoxication mirrored the definition in N.J.S.A. 2C:2-8(e)(2), which includes the language regarding a "knowing" introduction of intoxicants that defendant sought. The trial court further stated that defendant had offered evidence that his intoxication was not self-induced and that his alleged use of the intoxicants was not voluntary; as a result, the court also provided the jury with the definition of a voluntary act. The court's diminished capacity charge was consistent with the Model Jury Charge. The trial court's caveat regarding self-induced intoxication, included in the diminished capacity defense charge, did not improperly blend the law of self-induced intoxication with that of mental disease or defect. These instructions, and the twice-stated distinction between the statutory definition of self-induced intoxication and defendant's denial of self-induced intoxication, were proper to allow the jury to determine the issues. (pp. 19-24)

6. The Court also rejects defendant's claim that giving the self-induced intoxication instruction immediately after the mental disease or defect instruction effectively negated his diminished capacity defense. By carefully constructing the intoxication charge to accommodate defendant's requests, the trial judge properly conveyed the concept that if defendant's intoxication was due to a mental disease or defect that deprived him of the ability to knowingly introduce intoxicants into his body, this will negate a necessary element of the offenses. In light of the content of the charge as a whole, the sequence of instructions was not clearly capable of producing an unjust result. (pp. 24-26)

The judgment of the Appellate Division is **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN and PATTERSON join in JUSTICE SOLOMON'S opinion. JUSTICE FERNANDEZ-VINA and JUDGE CUFF (temporarily assigned) did not participate.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

EUGENE C. BAUM (a/k/a EUGENE
C. BAUM, JR.),

    Defendant-Appellant.


        Argued November 10, 2015 – Decided February 8, 2016

        On certification to the Superior Court,
        Appellate Division.

        Brian F. Plunkett, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney).

        Jennifer E. Kmieciak, Deputy Attorney
        General, argued the cause for respondent
        (John J. Hoffman, Acting Attorney General of
        New Jersey, attorney).


    JUSTICE SOLOMON delivered the opinion of the Court.

    Defendant Eugene Baum, while driving from his residence to

his mother's home, struck and killed two teenage girls walking

in the bike lane of a major roadway. At the time of the

incident, defendant's blood alcohol level was four times the

legal limit. Defendant had taken a prescribed anti-depressant,

Paxil, the night before, and Librium that morning to control his symptoms of alcohol withdrawal.

Defendant argued at trial that he lacked the mental capacity to act recklessly due to his involuntary intoxication, and that his intoxication was not voluntary because he suffered from the mental diseases or defects of alcoholism and depression. The jury convicted defendant of two counts of first-degree aggravated manslaughter and two counts of second-degree death by auto. The Appellate Division affirmed defendant's conviction but remanded for resentencing. In affirming the conviction, the Appellate Division rejected defendant's contention that the court's instruction regarding mental disease or defect negated defendant's diminished capacity defense. We affirm the Appellate Division.

I.

We begin with a recitation of the procedural background and pertinent facts. On the night of April 20, 2006, at approximately 8:05 p.m., defendant struck and killed two teenage girls walking in the bike lane of Kinnelon Road,[1] a major thoroughfare in Kinnelon, in Morris County. Witnesses reported the accident. Responding officers found two beverage containers

---

[1] The bike lane is between the roadway and its shoulder, and a guardrail separates the shoulder from adjacent property.

2

in defendant's car, one of which contained liquid that was 7.7 percent ethyl alcohol (15 proof), and reported that defendant could not maintain his balance and smelled strongly of alcohol. Defendant told police, "I think I hit a deer, but I don't know."

Defendant was handcuffed, transported to police headquarters, and advised of his Miranda[2] rights. At police headquarters, defendant's speech was slurred, his eyes were bloodshot and swollen, he could not maintain his balance, and he had difficulty holding the identification placard under his chin. As a result, police summoned members of the first-aid squad to treat defendant rather than perform sobriety tests or proceed with questioning.

After defendant was cleared by the first-aid squad, he was transported to Chilton Memorial Hospital where blood was drawn by stipulation,[3] revealing that defendant's blood alcohol content (BAC) was between .289 and .320. Defendant's BAC at the time of the accident was determined to be between .327 and .377. The blood test also revealed traces of Librium, a drug used to control the consequences of alcohol withdrawal, and which exacerbates the effects of alcohol.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] Defendant does not challenge the constitutionality of the drawing of his blood.

Approximately four hours after the accident, police again advised defendant of his Miranda rights, and defendant consented to speak with the police, signed a waiver form, and gave a video-taped statement. Defendant stated that he took Paxil the night before the accident and Librium the morning of the accident to control his "shakes." Even though defendant knew Librium would intensify his intoxication, he consumed more than two alcoholic beverages[4] before driving approximately fifteen miles from his home in Dover to his mother's home in Kinnelon. Defendant stated that he drank because he was an alcoholic, that he had struggled with alcoholism for about seven years, and that he was receiving therapy for his addiction.

As a result of the fatal automobile accident involving defendant, a Morris County Grand Jury returned an indictment charging defendant with two counts of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), and two counts of second-degree death by auto, N.J.S.A. 2C:11-5(b)(1).

At trial, defendant presented the expert testimony and reports of Dr. Frederick Rotgers and Dr. Charles Semel. Dr. Rotgers, a psychologist specializing in clinical, and cognitive and behavioral psychology, testified that the alcohol and

---

[4] Although defendant initially denied consuming more than two alcoholic beverages, toward the end of the interview he admitted that he had more than two drinks, and that he did not know how many he actually consumed.

4

Librium in defendant's system "severely impaired" defendant's ability to think or reason, and he analogized defendant's alcohol consumption to "chain smokers" who unconsciously light cigarette after cigarette. Dr. Rotgers opined that defendant consumed alcohol without ever forming the conscious intent to do so, and it was "very likely" defendant did not realize that he was drinking because his alcohol consumption had become "automatic behavior." On cross-examination, Dr. Rotgers conceded that defendant had been able to stop drinking on two prior occasions for six to eight weeks and had been able to hold a job and maintain social relationships.

Next, Dr. Semel, an expert in psychology, neurology, and psychopharmacology, testified that he diagnosed defendant with "chronic alcoholism" based on a clinical interview and psychometric testing. Dr. Semel further testified that defendant was in an alcohol-induced "delirium" at the time of the accident, and defendant's drinking was "automatic behavior" rather than the "product of conscious thought."

The State called Dr. Daniel Greenfield, an expert in psychiatry, forensic psychiatry, and addiction medicine, who explained that alcohol consumption is "conscious," "goal directed behavior."

> [W]hen a person makes a decision to buy alcohol, to drink it at various periods of time in different states . . . of mind. And

5

when a person . . . carries alcohol in his . . . car, which I understand was the case here, these are all purposeful goal-directed behaviors that people engage in. They're making a conscious decision to drink or to do what's necessary to be able to drink later on and to suggest, in my opinion, that an individual just simply does [it] . . . automatically . . . without even thinking about it just makes no sense to me at all.

At the charge conference, defense counsel argued that, in light of the testimony of Drs. Rotgers and Semel, it would be improper for the court to characterize defendant's intoxication as "self-induced" because the "net effect" would be to "negate diminished capacity." Defense counsel contended that "the concepts of self-induced intoxication and diminished capacity are of considerable importance in this case," and argued that "the concepts need to be outlined for the jury separately and distinctly." The trial judge responded that he would give the self-induced intoxication instruction following the mental disease or defect instruction. Defense counsel did not object.

In summation, defense counsel emphasized that all of the experts agreed defendant suffered from alcoholism and argued that defendant's intoxication was "a matter of automatic behavior," done "without conscious thought." Defense counsel claimed "the State's going to argue that [defendant] knew what he was doing ever[y] step of the way," but urged the jury to reject Dr. Greenfield's opinion that defendant's drinking was

6

"goal-directed behavior." Defense counsel reiterated the defense experts' opinions that, when defendant left his home "he did not have any ability to appreciate the risks or to appreciate his own condition; that is, [his] intoxication was not self-induced." Counsel also urged the jury to "[p]lease listen when the Judge tells you about diminished capacity."

Following summations, the trial judge instructed the jury on the elements of aggravated manslaughter and death by auto. While explaining the State's burden to prove that defendant acted recklessly, the judge informed the jury that "even if you find that the defendant was unaware of a risk due to self-induced intoxication, you may still find that the State has proven recklessness beyond a reasonable doubt even though the defendant was unaware of a risk of which he would have been aware were he not intoxicated." Next, the judge defined "self-induced intoxication" as "intoxication caused by substances which the actor knowingly introduces into his body," which the actor knows or ought to know has "the tendency . . . to cause intoxication." (Emphasis added). Noting that "defendant has offered evidence that his intoxication was not self-induced, and that his alleged use of the intoxicants was not voluntary," the judge defined "voluntary act" as "the product of the effort or determination of the actor."

7

> Our law considers an act to be voluntary, even if the bodily effort was the result of conscious decision or done as a matter of habit.
>
> Whether an act is voluntary is not determined by whether such bodily movements were done as a matter of choice or freewill. An act is involuntary only if it is not [sic] the result of bodily movement which is not the product of the effort or determination of the actor.

The judge apparently misspoke when he added the additional "not" to the instruction; defense counsel did not object. However, despite the misstatement, the Appellate Division found, and we agree, that read in context with the rest of the charge, the "instruction incorporated the exculpatory significance of defendant's expert testimony focusing on the relationship between defendant's intoxication and mental disease."

The judge repeated the definitions of "self-induced intoxication" and "voluntary act" as part of his death-by-auto instruction and, explaining that defendant had produced evidence that he "suffered from a mental disease or defect," gave the following instruction:

> In considering the State's burden of proof which is to prove each element of the charged offenses beyond a reasonable doubt, you must consider and weigh all of the evidence of defendant's mental state, including . . . evidence of mental disease or defect in determining whether or not the State has proven beyond a reasonable doubt that [defendant] acted recklessly which is an element of aggravated manslaughter and which

8

is an element of death by auto or vehicular homicide.

In making this decision, you must give defendant the benefit of any reasonable doubt about whether his mental functioning was such as to render him incapable of acting with the required state of mind or about whether he did in fact act with the required state of mind. In other words, you must determine whether despite the evidence of mental disease or defect, the State has proven beyond a reasonable doubt that the defendant acted recklessly as I have defined that term for you. If after considering all of the evidence, including the evidence of mental disease or defect or any other evidence or lack of evidence in the case, you have a reasonable doubt whether defendant's mental functioning was such as to render him incapable of acting with the required state of mind, or if you have reasonable doubt whether he did in fact act with the required state of mind, then the defendant is not guilty of aggravated manslaughter and death by auto or vehicular homicide.

The judge followed with a caveat:

However, if you find that defendant was unable to perceive a risk because it was due to self-induced intoxication through his own self-induced intoxication, you may not consider that inability to perceive a risk as being a result of a mental disease or defect, or that such inability to perceive a risk rendered him incapable of acting with a reckless state of mind. You may only consider any evidence regarding the defendant's mental state or defect in considering if the State has sustained its burden of proof regarding the defendant's mental state. <u>That is separate and distinct from his inability to perceive a risk due to self-induced intoxication.</u>

[(Emphasis added).]

9

At the conclusion of the jury charge, defense counsel objected to the judge's failure to include, as part of the statutory definition of self-induced intoxication, the exception for substances introduced pursuant to medical advice. Counsel argued that because defendant had received a prescription for Librium, the jury should be permitted to consider the entire statutory definition. However, the trial judge rejected defendant's contention, stating, "[h]is medical advice was not to take the alcohol with the Librium," and that defendant did not drink alcohol pursuant to medical advice. Defense counsel did not, at this time, suggest language for the judge to use in the jury charge.[5]

The jury found defendant guilty on all counts, and he was sentenced to two consecutive twenty-year prison terms subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant raised five issues on appeal, including that the court's instruction regarding mental disease or defect effectively negated defendant's diminished capacity defense.

---

[5] At the February 16, 2010 Charge Conference, defense counsel informed the court that because "the issue of whether intoxication is self-induced or not, is such an important issue in the case, I think you should read the charge that I developed specifically and exclusively as to that point." However, defense counsel's proposed charge is not part of the record, nor has it been provided to this Court.

10

The Appellate Division rejected four of defendant's arguments[6] and remanded for re-sentencing.  The panel affirmed defendant's convictions,[7] holding that "the judge advised the jury that [defendant's] drinking had to include a voluntary act for his intoxication to be 'self-induced.'"  The panel determined that the instruction objected to by defendant "incorporated the exculpatory significance of defendant's expert testimony focusing on the relationship between defendant's intoxication and mental disease."  Thus, the panel concluded the instruction did not warrant reversal.

We granted defendant's petition for certification limited to the issue of whether the jury instruction on mental disease or defect effectively negated defendant's diminished capacity defense.  220 N.J. 37 (2014).

II.

The relevant arguments of the parties are, briefly, as follows.  Defendant claims that his defense was predicated upon

---

[6] The first four claimed errors were that the trial court gave an inadequate instruction regarding defendant's statement to the police; defendant's statement to police should have been suppressed; the defense of pathological intoxication should have been allowed; and the sentence was excessive.

[7] The Appellate Division remanded for resentencing, finding that because defendant's intoxication was the primary evidence offered to establish defendant's recklessness, the trial court improperly considered defendant's intoxication as a basis to find aggravating factor one.

11

expert testimony that his drinking was involuntary, and the trial court directed the verdict by instructing the jury that defendant's intoxication was not self-induced unless it was not the product of his own effort.  Defendant contends that the only way to preserve his diminished capacity defense was to omit any suggestion that he could be guilty regardless of whether his drinking was voluntary or involuntary.  By giving the self-induced intoxication instruction immediately after the diminished capacity instruction, defendant argues that the court precluded the jury's consideration of diminished capacity where defendant's intoxication was the involuntary result of his alcoholism and depression.

The State emphasizes that the jury charge, taken as a whole, was neither ambiguous nor misleading because the jury instructions explicitly distinguished between the concepts of mental disease or defect and self-induced intoxication.  The State contends, therefore, the charge was "an accurate recitation of the law."

### III.

### A.

Turning to the legal principles that govern our resolution of the parties' arguments, we note that "'[a]ppropriate and proper charges are essential for a fair trial.'"  State v. Reddish, 181 N.J. 553, 613 (2004) (quoting State v. Green, 86

12

N.J. 281, 287 (1981)). The trial court must give "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Green, supra, 86 N.J. at 287-88. Thus, the court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." Reddish, supra, 181 N.J. at 613. "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Bunch, 180 N.J. 534, 541-42 (2004) (quoting State v. Nelson, 173 N.J. at 417, 446 (2002)); see also State v. Jordan, 147 N.J. 409, 422 (1997) (finding "[e]rroneous instructions on matters or issues that are material to the jury's deliberation are presumed to be reversible error in criminal prosecutions").

In conducting our review, we will apply a harmless error analysis because defendant objected at the charge conference to the proposed diminished capacity instruction on the grounds that "it gives the jury the impression that intoxication is the mental disease or defect that's the problem." See R. 2:10-2. Under that standard, there must "be 'some degree of possibility that [the error] led to an unjust result. The possibility must

13

be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'"  State v. Lazo, 209 N.J. 9, 26 (2012) (quoting State v. R.B., 183 N.J. 308, 330 (2005)).  "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law."  State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997) (quoting State v. Sette, 259 N.J. Super. 156, 190-91 (App. Div.), certif. denied, 130 N.J. 597 (1992)), certif. denied, 153 N.J. 49 (1998).  "'The key to finding harmless error in such cases is the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions.'"  Ibid. (quoting Sette, supra, 259 N.J. Super. at 192).

Deciding whether the charge as a whole is misleading requires consideration of the defense of diminished capacity in the context of a claim of involuntary intoxication.  Therefore, we must ascertain whether the trial court's jury charge blended the concepts of self-induced intoxication and diminished capacity, and if so, whether this was error clearly capable of producing an unjust result.

B.

The Criminal Code authorizes a defendant to present evidence of a mental disease or defect to "'negate the presence

14

of an essential mental element of the crime (as when, for example, a learning-disabled person strikes another but is unable to know that the blow could kill).'" State v. Rivera, 205 N.J. 472, 487 (2011) (quoting State v. Delibero, 149 N.J. 90, 98 (1997)); accord N.J.S.A. 2C:4-2. This defense "was designed by the Legislature not as a justification or an excuse, nor as a matter of diminished or partial responsibility, but as a factor bearing on the presence or absence of an essential element of the crime as designated by the Code." State v. Breakiron, 108 N.J. 591, 608 (1987). Thus, "[a] jury considers evidence of diminished capacity in relation to the State's burden to prove the essential elements of the crime." Delibero, supra, 149 N.J. at 98.

A defendant may raise a diminished capacity defense if (1) he or she "has presented evidence of a mental disease or defect that interferes with cognitive ability sufficient to prevent or interfere with the formation of the requisite intent or mens rea[,]" and (2) "the record contains evidence that the claimed deficiency did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime." State v. Galloway, 133 N.J. 631, 647 (1993). When such evidence is presented, the trial court is required to give a diminished capacity charge to the jury. State v. Kotter, 271 N.J. Super. 214, 221 (App. Div.) (citing Galloway, supra, 133 N.J. at 647)

15

(additional citations omitted), certif. denied, 137 N.J. 313 (1994). Because the Code does not define "mental disease or defect," we have determined that whether "a condition constitutes a mental disease or defect is one to be made in each case by the jury after the court has determined that the evidence of the condition in question is relevant and sufficiently accepted within the psychiatric community to be found reliable for courtroom use." Galloway, supra, 133 N.J. at 643; accord N.J.R.E. 702.

Although the Code provides that a defendant has the initial burden to introduce evidence of a mental disease or defect tending to show that he or she was incapable of forming the requisite intent, N.J.S.A. 2C:4-2, "the statute does not shift the burden of proof to the defendant to disprove an essential element of the case." State v. Moore, 122 N.J. 420, 431 (1991). Accordingly, the burden of proof remains on the State to establish the mens rea of the offense. Ibid.; Delibero, supra, 149 N.J. at 98.

C.

Turning to intoxication and its relevance to a diminished capacity defense, "intoxication" is defined by the Code as "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." N.J.S.A. 2C:2-8(e)(1). "Self-induced intoxication" is defined as

16

"intoxication caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime." N.J.S.A. 2C:2-8(e)(2) (emphasis added).

"Evidence of intoxication may be introduced to disprove that a defendant acted 'purposely' or 'knowingly.'" State v. Juinta, 224 N.J. Super. 711, 722 (App. Div.) (citing State v. Warren, 104 N.J. 571, 575-76 (1986)), certif. denied, 113 N.J. 339 (1988). However, "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial." N.J.S.A. 2C:2-8(b); see also Juinta, supra, 224 N.J. Super. at 722; Warren, supra, 104 N.J. at 575-76.

Consequently, a defendant claiming to have been voluntarily intoxicated at the time of the commission of a crime for which the requisite mental state is recklessness, such as aggravated manslaughter or death by auto, may nonetheless be found guilty. Warren, supra, 104 N.J. at 576-77; see also State v. Bey, 112 N.J. 123, 144-45 (1988), cert. denied, 513 U.S. 1164, 115 S. Ct. 1131, 130 L. Ed. 2d 1093 (1995).

IV.

17

A.

Here, defendant's recklessness was at issue because he was charged with aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), requiring the State to prove defendant "recklessly cause[d] death under circumstances manifesting extreme indifference to human life." As the Appellate Division noted, the "primary evidence of recklessness" offered by the State "was defendant's intoxication and the fact that he was driving on the road's shoulder."

Defendant does not dispute that N.J.S.A. 2C:2-8(b) precludes the admission of evidence of self-induced intoxication to disprove recklessness. Further, defendant does not contend that intoxication, by itself, rises to the level of a mental disease or defect sufficient to establish a diminished capacity defense in this case. N.J.S.A. 2C:2-8(c). Rather, defendant relies on N.J.S.A. 2C:4-2's provision for the admissibility of evidence of a mental disease or defect "whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense." Defendant contends that self-induced intoxication under N.J.S.A. 2C:2-8(b) is a "distinctly different" concept from intoxication resulting from a "mental disease or defect" under N.J.S.A. 2C:4-2,[8] and he could not have

---

[8] Indeed, at the charge conference, defense counsel objected to the proposed diminished capacity instruction on the grounds that

18

had the requisite mental state, recklessness, because he was intoxicated involuntarily due to the mental diseases or defects of alcoholism and depression.

In other words, defendant claims that his mental diseases or defects negated the voluntariness of his intoxication, not that his intoxication deprived him of the ability to form the requisite intent.  Hence, defendant contends his intoxication should have been considered as evidence of his mental diseases or defects.  Relying on his experts' testimony that his intoxication was the unconscious product of alcoholism and depression, defendant argues the mental disease or defect instruction should have specified alcoholism and depression to avoid confusion, and that the self-induced intoxication instruction immediately following the mental disease or defect instruction nullified his diminished capacity defense.

### B.

In addressing each component of the jury charge and the sequencing of the charge as a whole, we first note that after instructing the jury on the elements of manslaughter, the trial court gave the following instruction on "self-induced intoxication":

> In determining whether the State has proven beyond a reasonable doubt that

"it gives the jury the impression that intoxication is the mental disease or defect that's the problem."

19

> defendant acted recklessly, defendant's unawareness of a risk due to self-induced intoxication is immaterial. In other words, even if you find that the defendant was unaware of a risk due to self-induced intoxication, you may still find that the State has proven recklessness beyond a reasonable doubt even though defendant was unaware of the risk of which he would have been aware were he not intoxicated.
>
> Self-induced intoxication means intoxication caused by substances which the actor <u>knowingly</u> introduces into his body. The tendency of which -- the tendency of which to cause intoxication <u>he knows or ought to know.</u>
>
> [(Emphasis added).]

This instruction is a recitation of <u>N.J.S.A.</u> 2C:2-8(e)(2), "self-induced intoxication." Moreover, the definition uses language argued for by defendant -- that he did not "knowingly" introduce intoxicants into his body.

Then, noting "defendant has offered evidence that his intoxication was <u>not</u> self-induced, and that his alleged use of the intoxicants was <u>not</u> voluntary," the court defined "voluntary act" as "the product of the effort or determination of the actor." (Emphasis added).

> Our law considers an act to be voluntary, even if the bodily effort was the result of conscious decision or done as a matter of habit.
>
> Whether an act is voluntary is not determined by whether such bodily movements were done as a matter of choice or freewill. An act is involuntary only if it is not [sic] the result of <u>bodily movement which is not the</u>

20

> product of the effort or determination of the actor.

[(Emphasis added).]

Defendant argues that the trial court's instruction was misleading and capable of directing the jury to find that his intoxication was voluntary, because it explained "voluntary act" without defining an act done "knowingly." We are not persuaded. The trial court's definition of "self-induced" intoxication mirrors the statutory definition under N.J.S.A. 2C:2-8(e)(2), emphasizing that "intoxication is caused by substances which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know." (Emphasis added). Moreover, the trial court was careful to note that "defendant has offered evidence that his intoxication was not self-induced, and that his alleged use of the intoxicants was not voluntary." (Emphasis added).

Furthermore, as part of its death-by-auto charge, the trial court repeated the same definitions of "self-induced intoxication" and "voluntary act," stressing both the "knowingly" standard, and that defendant was arguing his intoxication was not self-induced. We conclude that after twice hearing the distinction between the statutory definition of "self-induced intoxication" and defendant's contention that his intoxication was not self-induced, the jury was capable of

21

discerning the difference between "knowingly" and "voluntarily." See State v. Ross, 218 N.J. 130, 152 (2014) (noting long-held presumption that jury follows court's instructions).

In addition, defendant's experts testified that defendant had mental deficiencies that were capable of and, in fact, did deprive him of the ability to form the requisite intent. Acknowledging that contention, the trial court next gave the following model charge on diminished capacity to the jury:

> Now in relation to the aggravated manslaughter charges and the death by auto or vehicular homicide charges, evidence alleging that the defendant suffered from a mental disease or defect has been produced. In considering the State's burden of proof which is to prove each element of the charged offenses beyond a reasonable doubt, you must consider and weigh all of the evidence of defendant's mental state, including . . . evidence of mental disease or defect in determining whether or not the State has proven beyond a reasonable doubt that [defendant] acted recklessly which is an element of aggravated manslaughter and which is an element of death by auto or vehicular homicide.

See Galloway, supra, 133 N.J. at 647; Kotter, supra, 271 N.J. Super. at 221.

The Model Jury Charge on this point, "Evidence of Mental Disease or Defect," states that the jury should be instructed, in relevant part, as follows:

> In considering the State's burden of proof, which is to prove every element of the charged offense(s) beyond a reasonable doubt, you must

22

consider and weigh all the evidence of defendant's mental state, including that offered as evidence of mental disease or defect [**OR** *insanity*] [**OR:** *[Insert Specific Mental Disease or Defect Alleged]*], in determining whether or not the State has proven beyond a reasonable doubt[.]

[Model Jury Charge (Criminal), "Evidence of Mental Disease or Defect (N.J.S.A. 2C:4-2)" (June 5, 2006).]

A comparison of the trial court's charge with the Model Charge demonstrates that the court adhered to the letter and spirit of the model charge. It is also important to note that the Model Charge utilizes "**OR**" to indicate that a trial court may name the mental diseases or defects alleged to be affecting a defendant, but is not required to do so. We find no abuse of discretion in not doing so here, in light of the instructions on voluntary intoxication and mental diseases or defects given and in light of defendant's failure to object to this aspect of the charge.

The trial court then provided a caveat immediately following the diminished capacity instruction:

However, if you find that defendant was unable to perceive a risk because it was due to self-induced intoxication through his own self-induced intoxication, you may not consider that inability to perceive a risk as being a result of a mental disease or defect, or that such inability to perceive a risk rendered him incapable of acting with a reckless state of mind. You may only consider any evidence regarding the defendant's mental state or defect in considering if the State has sustained its burden of proof regarding the defendant's mental state. That is separate

23

> and distinct from his inability to perceive a
> risk due to self-induced intoxication.

[(Emphasis added).]

Defendant alleges that by including this "addendum," which "blended the law of self-induced intoxication with that of mental disease or defect," the result was a misleading and confusing charge. Again, we disagree. To eliminate any confusion related to the interplay of "mental disease" and "self-induced" intoxication, the trial court informed the jury that "evidence regarding the defendant's mental state or defect . . . is separate and distinct from his inability to perceive a risk due to self-induced intoxication."

We accept that the jury was asked to differentiate between self-induced intoxication and a mental disease or defect. However, we find that the trial court's instructions preserved defendant's argument that his intoxication was not self-induced while respecting the Legislature's intent to preclude evidence of self-induced intoxication to rebut a charge of recklessness.

Defendant also argues that the placement of the "self-induced intoxication" instruction immediately after the mental disease or defect instruction effectively negated his diminished capacity defense. Indeed, the trial court, faced with defendant's claim that his intoxication was not self-induced, could have, after the instruction on mental disease or defect,

24

emphasized that "defendant has offered evidence that his intoxication was <u>not</u> self-induced, and that his alleged use of the intoxicants was <u>not</u> voluntary."  However, the trial court reminded the jury of the intoxication defense after each and every offense charged and briefly explained its elements of proof along with the defense of involuntary intoxication.  A jury should be advised that if defendant's intoxication was due to a mental disease or defect that deprived him of the ability to knowingly introduce intoxicants into his body, the State has not proven a necessary element of the crime.  The trial judge sufficiently conveyed this principle by carefully constructing the intoxication charge to accommodate defendant, who did not object at trial or present a suggested order for the charges given.

A judge need not use the precise words or the precise sequence demanded by one party or the other.  <u>Cf.</u> <u>State v. Jordan</u>, 147 <u>N.J.</u> 409, 422 (1997) ("No party is entitled to have the jury charged in his or her own words; all that is necessary is that the charge as a whole be accurate.").  It is the sole duty of the court to deliver "accurate instructions on the law as it pertains to the facts and issues" of the case at hand.  <u>Reddish</u>, <u>supra</u>, 181 <u>N.J.</u> at 613.  We conclude that the sequence of instructions here was not clearly capable of producing an

25

unjust result in light of the content of the charge as a whole. Therefore, we find there was no error here.

Accordingly, we hold that the jury instructions, taken as a whole, are neither ambiguous nor misleading because the jury charge did not blend the concepts of self-induced intoxication and diminished capacity, and the charge explicitly distinguished between the notions of mental disease or defect and self-induced intoxication -- reflecting an accurate recitation of the law. Green, supra, 181 N.J. at 287.

V.

For the reasons outlined above, the judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN and PATTERSON join in JUSTICE SOLOMON'S opinion. JUSTICE FERNANDEZ-VINA and JUDGE CUFF (temporarily assigned) did not participate.

26

SUPREME COURT OF NEW JERSEY

NO.     A-107                          SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

EUGENE C. BAUM (a/k/a EUGENE C. BAUM, JR.),

        Defendant-Appellant.


DECIDED            February 8, 2016
                Chief Justice Rabner                    PRESIDING
OPINION BY       Justice Solomon
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | ------------------- | |
| TOTALS | 5 | |