STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN WARREN, DEFENDANT-APPELLANT.

Argued May 13, 1986—Decided December 15, 1986.

*Charles H. Landesman* argued the cause for appellant (*Law, Froelich & Landesman,* attorneys).

*Kenneth M. Denti,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney).

*Susan Green,* Assistant Deputy Public Defender, argued the cause for *amicus curiae,* Public Defender (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue on this appeal is whether a trial court must charge that if a defendant establishes that his voluntary intoxi-

cation negated the mental elements of purpose and knowledge, which are elements of the crime of murder, the jury may still find the defendant guilty of manslaughter or aggravated manslaughter.

Defendant, John Warren, was indicted for murder, *N.J.S.A.* 2C:11–3a; unlawful possession of a weapon, *N.J.S.A.* 2C:39–5b; and possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a. At trial, the court instructed the jury on the weapons offenses, murder, and the lesser included offenses of aggravated manslaughter, *N.J.S.A.* 2C:11–4a; "passion-provocation" manslaughter, *N.J.S.A.* 2C:11–4b(2); and simple manslaughter, *N.J.S.A.* 2C:11–4b(1). The court also explained the application of intoxication to crimes requiring a knowing or purposeful state of mind, but failed to explain that intoxication was not a defense to manslaughter or aggravated manslaughter, thereby depriving the jury, if it found that defendant had been intoxicated, of the option of convicting the defendant of those lesser included offenses. Consequently, the jury convicted the defendant of murder, as well as possession of a weapon without a permit and possession of a weapon with the purpose to use it unlawfully. In an unreported opinion, the Appellate Division affirmed. We granted certification, 102 *N.J.* 363 (1985), and now reverse.

I

The following facts emerged at trial. In May 1983, defendant, John Warren, and Carol Cox, the victim, broke off a six-year affair after Cox threw a caustic substance at defendant. About a month later, on June 17, 1983, Warren called Cox early in the morning. Cox then left the house to run an errand and to drive her eight-year old son, Marvin, to school. About 8:30 a.m. Warren parked his car directly behind Cox's car, which was parked in front of a market in Newark. According to Marvin, who was sitting in his mother's car, he heard her say "[g]et off my car." As Cox left her car, defendant called out,

"Hey! Come here." Apparently, in response to Warren's call, Cox approached the passenger window of his car. Warren fired three shots, two of which hit the victim. Cox staggered into the market, stating, "He shot me," and subsequently died. Warren drove away from the scene, but was later apprehended. In a statement to the police, he admitted that he shot the victim, explaining that he carried out the shooting with "military precision."

At trial, Warren's defense was that he was so intoxicated at the time of the offense that he was incapable of acting "purposely" or "knowingly." Although he did not testify himself, defendant's wife and two of his sons testified about his alcoholism and drunkenness on the day of the shooting. Since 1972, he had been hospitalized several times for alcoholism, most recently at a Veterans Administration hospital from June 6–9, 1983, a week and a half before the shooting. During the day and night before the shooting, defendant had consumed almost three pints of rum and approximately fourteen cans of beer. He went to sleep around 11:30 p.m., awoke at 5:30 a.m., and before leaving the house between 7:00 and 7:30 a.m., drank a substantial amount of rum as well as a "king-size" beer.

Relying on the Model Jury Charge, the court instructed the jury on intoxication:

There is presented to this jury evidence concerning the use of alcohol by this defendant and whether or not on the day in question he was intoxicated and under the influence of alcohol. Let me state to you that generally a defendant is not relieved of criminal responsibility because he is found to have acted under the influence of an intoxicating beverage. The general assumption is that every man is normal and is possessed of ordinary faculties. The State need not prove that the defendant was sober. You may consider the evidence as to the defendant's consumption of alcoholic beverages in determining whether or not he was intoxicated to such a degree that you could believe he was incapable of acts purposely or knowingly, and I will hereafter define purposely for you. However, once a defendant produces evidence of his intoxication, the State must prove beyond a reasonable doubt that such intoxication did not render him incapable of acting purposely or knowingly.

Intoxication under our law means a disturbance of the mental or physical capacities resulting from the introduction of the alcoholic substances into the body. In considering the question of intoxication you must carefully distin-

guish between the condition of the mind, which is merely excited by intoxicating drink and, yet, capable of acting with purpose and knowledge and the condition of the mind in which one's mental faculties are so prostrated as to deprive him of his will to act and his ability to reason thereby rendering a person incapable of acting and, thus, preventing him from committing the crime charged with the mental state required of either purposely or knowingly committing the act.

This distinction is important because you must make that factual determination. You must also consider along with all the other evidence the degree of intoxication in determining whether or not the defendant was acting with purpose or knowledge to commit the crime charged.

The court further explained the elements of murder, the homicide for which Warren was indicted, with particular reference to the terms "purposely" or "knowingly." When instructing the jury on the lesser included manslaughter crimes, the court illustrated the differences between each form of manslaughter and murder. Although the court neglected to relate the intoxication defense to the manslaughter charges, neither counsel objected to that portion of the charge. During the course of its deliberations, however, the jury requested a rereading of the three definitions of manslaughter.

## II

In a thoughtful opinion, Justice Clifford recently reviewed the development of intoxication as a defense at common law and under the New Jersey Penal Code. *State v. Cameron*, 104 *N.J.* 42, 46–53 (1986). At common law, a defendant who acted under the influence of alcohol or drugs generally was not excused from criminal responsibility. *Id.* at 46. Although it continued to be unavailable as a defense to crimes involving a "general intent," intoxication evolved into a defense to crimes requiring a "specific intent." *Id.* at 47. The Code adopts this common-law approach, but employs different terminology. Under the Code, "purpose" and "knowledge" replace "specific intent," and "recklessness" together with criminal "negligence" replace "general intent." *Id.* at 52; New Jersey Criminal Law Revision Commission, II *The New Jersey Penal Code Final Report* 68 (1971) (*New Jersey Report*). In this regard, *N.J. S.A.* 2C:2–8 tracks the Model Penal Code, which admits evi-

dence that a defendant was drunk or drugged to disprove that he or she acted "knowingly" or "purposely," but not to disprove that the defendant acted "recklessly" or "negligently." *Model Penal Code* § 2.08 comment 1 at 356–57 (Official Draft and Revised Comments 1985). Consequently, under the New Jersey Code, when evidence of intoxication is introduced, a defendant may still be convicted of aggravated manslaughter or manslaughter, both of which require only that the defendant act "recklessly."

The Code defines "recklessly:"

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning. [*N.J.S.A.* 2C:2–2b(3).]

As a matter of logic, intoxication that negates purpose or knowledge should also negate recklessness. *Model Penal Code* § 2.08 comment 3 at 7–9 (Tent. Draft No. 9, 1959) (*Penal Code Draft*). Arguably, therefore, intoxication that prevents a conviction of murder should also prevent one for manslaughter. As a matter of policy, however, the drafters of the Code concluded that intoxication should not exonerate a defendant from crimes involving recklessness. Consequently, they declared that when recklessness establishes an element of the offense, it is immaterial that the actor, because of voluntary intoxication, was unaware of a risk. *Id.* at 9. The New Jersey Law Revision Commission similarly concluded that "recklessness is satisfied even though the defendant was unaware of a risk of which he would have been aware were he not intoxicated." *New Jersey Report, supra*, at 68. As a result, the New Jersey Code states with respect to intoxication:

> a. Except as provided in subsection d. of this section, intoxication of the actor is not a defense unless it negatives an element of the offense.

b. When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such unawareness is immaterial. [*N.J.S.A.* 2C:2–8.]

■ The statute acknowledges not only that intoxication does not excuse criminal conduct unless it disproves an element of the offense charged, but also that unawareness of a risk because of self-induced intoxication is immaterial when, as is the case with manslaughter, recklessness is an element of the offense. A voluntary drunk may be found guilty of manslaughter, notwithstanding his unawareness "of a risk of which he would have been aware had he been sober * * *." *N.J.S.A.* 2C:2–8. Thus, the defendant who is so drunk that he cannot be found guilty of murder may still be found guilty of aggravated manslaughter or manslaughter. As Chief Justice Traynor wrote, "the law does not permit him to use his own vice as a shelter against the consequences of his act." *People v. Conley,* 64 *Cal.*2d 310, 324 n. 4, 49 *Cal.Rptr.* 815, 825 n. 4, 411 *P.*2d 911, 921 n. 4 (1966). Under the statute, defendant's intoxication is immaterial in determining whether he acted with a conscious disregard of a risk. Defendant's conduct is to be measured by an objective standard without regard to his intoxication, and defendant is judged not in his claimed state of intoxication, but as if he were sober. In effect, the State must prove not that defendant was in fact aware of the risk, but that if he had been sober at the time of the offense, he would have been so aware. So, for example, in the present case, the jury might have been instructed if it found that defendant was intoxicated, it could find, without regard to his actual mental state, that he acted recklessly in pointing and firing the gun at the victim. The State need not prove that the defendant was in fact aware of the risk at the time of the shooting. In sum, evidence of intoxication is admissible as a defense to murder to disprove that a defendant acted purposely or knowingly, but not as a defense to manslaughter to show that he was unaware of a risk of which he would have been aware had he been sober.

### III

■ The basic defect in the charge was the failure to relate the defense of intoxication to the lesser included offenses of manslaughter and aggravated manslaughter. The court defined "recklessness," which is predicated on the defendant's conscious disregard of "a substantial and unjustifiable risk," *N.J.S.A.* 2C:2–2b(3), but did not explain that defendant's intoxication was immaterial to determining whether defendant so acted. Although the court related the effect of intoxication to the unlawful possession of a weapon, an offense that requires knowledge, it did not charge that intoxication was not a defense to aggravated manslaughter or manslaughter. The court should have told the jury that even if it found defendant's intoxication rendered him incapable of acting knowingly or purposely, it could still find that he consciously disregarded "a substantial and unjustifiable risk," *N.J.S.A.* 2C:2–2b(3) (manslaughter), or that he caused the victim's death "under circumstances manifesting extreme indifference to human life," *N.J. S.A.* 2C:11–4a (aggravated manslaughter). Furthermore, the court should have instructed the jury not to consider defendant's intoxication in determining whether he consciously disregarded the risk to the victim, but to view defendant's conduct objectively, as if he were sober, in determining whether he consciously disregarded that risk. By failing to instruct the jury that it could accept defendant's intoxication as a defense to murder and still convict him of manslaughter, the court permitted the jury to believe that defendant's intoxication prevented a conviction for manslaughter. In effect, the court unintentionally prevented defendant's conviction on the lesser included offenses of aggravated manslaughter or manslaughter, and forced the jury to choose between a murder conviction and an acquittal.

It is the duty of the trial court to instruct the jury on the relevant legal principles, "and counsel may justifiably assume that fundamental matters will be covered in the charge." *State v. Green,* 86 *N.J.* 281, 288 (1981). Because of this duty, we have found plain error where the jury instructions failed to

explain material issues, even in the absence of an objection. *State v. Grunow*, 102 *N.J.* 133, 148–49 (1986). As Justice Stein has explained:

> In general, it is speculative to forecast what verdict a jury would have returned if properly instructed on the basis of the verdict that a jury returned after an incomplete instruction. We have cautioned that " '[a]ppropriate and proper charges to a jury are essential for a fair trial,' " and erroneous instructions on material issues are presumed to be reversible error, excusable only if they are harmless beyond a reasonable doubt. Such errors are "poor candidates for rehabilitation under the harmless error philosophy." [*State v. Crisantos (Arriagas)*, 102 *N.J.* 265, 273 (1986) (citations omitted).]

Similarly, in reversing a conviction for aggravated manslaughter, Justice O'Hern recently summarized the critical role of jury charges in *State v. Grunow, supra*, 102 *N.J.* at 148–49:

> We have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error. The right to a trial by jury includes certain intangible but real benefits to a defendant that are lost whenever the jury is induced to think incorrectly in terms of guilt. So paramount is the duty to insure a fair trial that a jury must deliberate in accordance with correct instructions even when such instructions are not requested by counsel. Unless a chosen trial strategy dictates against it, and perhaps in some cases even when that is the case, the court ordinarily has a supervening responsibility to charge the jury concerning any version of the offense "clearly indicate[d]" by the evidence to require proper jury consideration. So solemn is the jury's responsibility that we do not permit it to be misled by consideration of issues not proper for its deliberation. "This judicial obligation, to assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial." [citations omitted.]

We find that summary compelling in evaluating the effect of the trial court's failure to inform the jury that intoxication is not a defense to manslaughter or aggravated manslaughter.

The charge was further flawed because in explaining aggravated manslaughter, the court employed the definition of that offense under the former law, *N.J.S.A.* 2C:11–4a (amended 1981), that "[c]riminal homicide constitutes aggravated manslaughter when the actor other than purposely or knowingly causes death under circumstances manifesting extreme indifference to human life." By contrast, the Code now defines aggra-

vated manslaughter: "when the actor recklessly causes death under circumstances manifesting extreme indifference to human life." *N.J.S.A.* 2C:11-4a. Thus, the language of the charge did not accurately reflect the mandate of the Code with its emphasis on recklessness.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.