223 N.J. Super. 367 (1988)
538 A.2d 1256
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DELANO WASHINGTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1988.
Decided March 2, 1988.
*369 Before Judges PRESSLER, BILDER and SKILLMAN.
Alfred A. Slocum, Public Defender, attorney for appellant (Thomas C. Miller, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent (Debra L. Stone, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted for murder, in violation of N.J.S.A. 2C:11-3a(1) or N.J.S.A. 2C:11-3a(2). The prosecutor sought the death penalty. Defendant claimed that he was insane at the time of the crime or, alternatively, that he lacked the mental capacity to have acted "purposely" or "knowingly." A jury found defendant guilty of murder but was unable to reach agreement regarding imposition of the death penalty. The trial court sentenced defendant to life imprisonment, with 30 years of parole ineligibility.
The brief filed by defendant's appellate counsel makes the following arguments:

*370 POINT I: THE PROSECUTOR'S SUMMATION EXCEEDED THE BOUNDS OF PROPRIETY, WARRANTING A REVERSAL.
POINT II: THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY REGARDING MANSLAUGHTER AS A LESSER INCLUDED OFFENSE OF MURDER.
POINT III: THE PROCESS OF DEATH QUALIFICATION IN THE PRESENT CASE DEPRIVED THE DEFENDANT OF HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL AS GUARANTEED BY THE NEW JERSEY STATE CONSTITUTION.
Defendant filed a supplemental pro se brief which makes the following additional argument:
POINT I: DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN CONTRAVENTION OF HIS SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, WHEN COUNSEL FAILED TO INTERPOSE AN OBJECTION AS TO THE RACIAL COMPOSITION OF BOTH THE VENIRE AND THE PETIT JURY.
We conclude that the judgment of conviction must be reversed and the case remanded for a new trial because the trial court failed to charge the jury as to the lesser included offenses of aggravated manslaughter and manslaughter. We find it unnecessary to consider the other issues raised by defendant because they are unlikely to arise at a new trial.
The killing occurred shortly after 8:00 a.m. on March 2, 1984. A neighbor observed defendant and his wife drive away in their van. Approximately 15 to 20 minutes later, defendant came to the neighbor's door. He was drenched with blood. He said to the neighbor: "Please get help for me. Call the police ... I just did something terrible." Defendant then asked the neighbor's daughter to go down to the van and help his wife. The neighbor's daughter ran downstairs and found the victim's bloody body with a knife protruding from her neck.[1] An autopsy later disclosed that the victim had 30 stab wounds in the area of her face, neck and upper body. In addition, she had 10 or 11 superficial cuts on her arms and hands.
*371 Defendant did not testify at trial. His defenses of insanity and diminished capacity were presented through the testimony of members of his family and medical experts. That testimony indicated that defendant is an epileptic and that he had become violent during one of his epileptic seizures. On that occasion he had pulled his wife by the hair, attempted to punch his brother-in-law, and then had to be physically restrained by the members of his family until the police came and brought him to a hospital. Defendant had no recollection of these earlier events after this seizure was over. The essential theory of the defense was that defendant was experiencing a similar epileptic seizure when he killed his wife.
Two Ocean County jail physicians who examined defendant on the day of the killing testified that defendant gave inappropriate, incoherent and non-responsive answers to their questions. The doctors concluded that defendant was in an acute psychotic condition. Consequently, they signed papers recommending that he be committed to a mental institution. Defendant was subsequently committed to Trenton Psychiatric Hospital pursuant to court order.
When he was first in the hospital, defendant expressed a lack of awareness that his wife was dead and appeared to be utterly surprised when told that she was dead and that he probably had killed her. However, later during his hospitalization and in subsequent interviews with the doctors who testified at trial, defendant expressed a limited recall of the killing. He stated that he and his wife had gotten into an argument about how much money she was going to spend on clothing for their children and that he had pulled the van to the side of the road. Defendant then saw a knife in his wife's pocketbook, which both he and his wife attempted to grab. A struggle ensued for possession of the knife, in the course of which his wife got stabbed in the stomach. Defendant told the doctors that he had no further recollection of the killing, although he stated to one doctor that he had found his wife with the knife in her throat.
*372 The defense presented the testimony of Dr. Seymour Kuvin, a psychiatrist, who stated that it was medically probable defendant was experiencing an epileptic seizure and did not know what he was doing when he killed his wife. In rebuttal, the prosecution presented the testimony of Dr. Chester L. Trent, who expressed the opinion that defendant was not experiencing an epileptic seizure and was not psychotic when he killed his wife.
The trial court charged the jury with respect to the defenses of insanity and diminished capacity. However, it denied defense counsel's request to give the jury a lesser included offense charge as to manslaughter.[2]
The applicable test for determining whether a jury should be charged with respect to a lesser included offense is set forth in N.J.S.A. 2C:1-8e as follows:
The Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.
The Supreme Court has characterized the "rational basis" test of N.J.S.A. 2C:1-8e as "... a low threshold ... for permitting a charge on a lesser-included offense." State v. Crisantos, 102 N.J. 265, 278 (1986). Therefore, "[w]hen the lesser-included offense charge is requested by a defendant, as in this case, the trial court is obligated, in view of defendant's interest, to examine the record to determine if the rational-basis standard has been satisfied." Ibid.
There are three different forms of manslaughter proscribed by N.J.S.A. 2C:11-4a, b(1) and b(2), as follows:
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
b. Criminal homicide constitutes manslaughter when:
(1) It is committed recklessly; or

*373 (2) A homicide which would otherwise be murder under section 2C:1-3 is committed in the heat of passion resulting from a reasonable provocation.
We conclude that in this case the jury should have been charged with respect to each of the three forms of manslaughter described in N.J.S.A. 2C:11-4.
To be found guilty of aggravated manslaughter under N.J.S.A. 2C:11-4a or of manslaughter under N.J.S.A. 2C:11-4b(1), a person must be found to have acted "recklessly." A person acts "recklessly" within the intent of N.J.S.A. 2C:11-4a and 4b(1) when he "consciously disregards a substantial and unjustifiable risk" that death will result from his conduct. N.J.S.A. 2C:2-2b(3); see State v. Breakiron, 108 N.J. 591, 605 (1987).
The Court in State v. Ramseur, 106 N.J. 123, 267-270 (1987) recognized the appropriateness of charging a jury regarding aggravated manslaughter under circumstances similar in many respects to the present case. The defendant in that case had attacked the victim with a knife and inflicted multiple stab wounds resulting in her death. The defenses in Ramseur, as in the present case, were insanity and diminished capacity. After charging the jury with respect to the elements of the crime of murder, the trial court said:
[S]hould you find that the defendant by virtue of a mental defect did not purposely or knowingly kill [the victim], then you are to go to consider whether he is nonetheless guilty of aggravated manslaughter.... [106 N.J. at 268].
On appeal Ramseur argued that the trial court's refusal to charge the jury that "diminished capacity will reduce murder to manslaughter where the defendant is found to have suffered trauma that impaired his ability to meet the requisite mental state for murder" coerced the jury to find him guilty of murder. 106 N.J. at 267. Ramseur argued that "... diminished capacity would serve to `mitigate the offense to manslaughter, regardless of whether defendant met the specific mental state required for manslaughter.'" Ibid. The Court rejected this argument, stating:
... The trial court charged on aggravated manslaughter in this case not because diminished capacity could reduce the offense from murder to aggravated manslaughter, but because the evidence warranted consideration of aggravated *374 manslaughter by the jury in the event it was unpersuaded that defendant had acted "purposely" or "knowingly." The trial court determined, and we agree, that if the jurors did not find knowing or purposeful conduct, they should then appraise the evidence to determine whether defendant acted with a "conscious disregard of a substantial and unjustifiable risk," N.J.S.A. 2C:2-2, "under circumstances manifesting extreme indifference for human life," N.J.S.A. 2C:11-4  the constituent elements of manslaughter. [106 N.J. at 269-270 (emphasis in original)].
Although the Court in Ramseur did not expressly approve the trial court's charging the jury as to aggravated manslaughter, such approval is implicit in its opinion.
The conclusion that a person with diminished capacity may be found not to have acted "knowingly" or "purposely" and therefore not be guilty of murder but still have acted with "conscious awareness of unjustifiable risk" and thus be guilty of manslaughter was expressly recognized in State v. Breakiron, supra. The defendant in that case strangled his girlfriend with a dish towel. His basic defenses were insanity and diminished capacity. The trial court submitted the defense of insanity to the jury but refused to charge the jury with respect to diminished capacity. It also refused to permit the jury to consider aggravated manslaughter and reckless manslaughter as lesser included offenses. A majority of the Appellate Division sustained both of these rulings and affirmed the conviction. State v. Breakiron, 210 N.J. Super. 442 (App.Div. 1986). However, the Supreme Court concluded that defendant was entitled to have the jury charged with respect to the defense of diminished capacity and therefore reversed defendant's murder conviction. State v. Breakiron, supra, 108 N.J. at 621. The Court did not expressly pass upon the correctness of the trial court's refusal to charge the lesser included offenses of aggravated manslaughter and manslaughter. However, the Court indicated that evidence of diminished capacity would be relevant on the question whether a person accused of homicide had acted "purposely," "knowingly" or with the lesser degree of culpability required for a conviction of manslaughter, i.e., a "conscious awareness of an unjustifiable risk":

*375 In rejecting the defendant's argument that diminished capacity "as a matter of law * * * transforms murder into manslaughter," State v. Ramseur, supra, 106 N.J. at 270 n. 61, we made clear, however, its relevance to the question whether "in fact[] defendant's state of mind, because of its diminished capacity, could be found to meet the requirement of manslaughter, i.e., a `conscious awareness of an unjustifiable risk.'" Ibid. Thus, negating the mental state for murder by producing evidence of mental disease or defect does not prohibit a conviction for manslaughter provided the essential elements of that crime are present. [108 N.J. at 609-610 (emphasis in original)].
Accordingly, the Court concluded that "... if the jury or trier of fact determines that the mental disease or defect did negate the requisite mental state for murder, conviction of manslaughter is not precluded if the evidence establishes the essential elements of that crime." Id. at 621; see also State v. Bowens, 108 N.J. 622, 640 (1987); State v. Warren, 104 N.J. 571, 575-577 (1986).
The principles we distill from Ramseur and Breakiron are that diminished mental capacity may be found to have prevented a person accused of murder from acting "purposely" or "knowingly," but that person may nonetheless have had the mental capacity to have acted with a "conscious disregard of a substantial and unjustifiable risk." Therefore, evidence that the accused had a diminished capacity at the time of the crime is relevant in determining whether it is appropriate to charge aggravated manslaughter and manslaughter as lesser included offenses. However, it is inappropriate to charge the jury that diminished capacity will reduce murder to manslaughter. Rather, the jury should be charged with respect to the specific mental elements of the crimes of murder and manslaughter as set forth in the Code.
We conclude that under these principles the trial court was required to charge the jury regarding the lesser included offenses of aggravated manslaughter and manslaughter. There was evidence presented that defendant was suffering from an epileptic seizure at the time of the crime and that he was unaware of and unable to control his actions. If the jury had accepted this testimony in its entirety, it could have acquitted defendant by reason of insanity. However, the jury also could *376 have concluded that defendant lacked the cognitive faculties to have acted "purposely" or "knowingly" but that he retained a sufficient awareness of what he was doing and control over his actions to have acted with a "conscious disregard of a substantial and unjustifiable risk."
We also conclude that the jury should have been charged with respect to passion/provocation manslaughter under N.J.S.A. 2C:11-4b(2). In State v. Powell, 84 N.J. 305 (1980), a pre-Code case, the defendant gave a number of different versions of the crime to the police and at trial. Under one possible view of the facts, defendant and his wife had become involved in an argument. She then lunged for the gun which he carried on his person. The two struggled for control of the gun and during the struggle, defendant shot his wife. The defendant, now in possession of the gun, kept shooting his wife either in fear that she would get up and attack him again or simply in anger at the thought that she had previously grabbed the gun to attack him. The Court concluded that under these circumstances it was reversible error not to instruct the jury with respect to passion/provocation manslaughter.
In State v. Crisantos, supra, a case arising under the Code, the Court observed that "... mitigation of homicide because of passion/provocation is ordinarily a question for the jury, unless the evidence is so weak as to preclude jury consideration." 102 N.J. at 275. However, the Court concluded that the facts of Crisantos, which even viewed most favorably to defendant involved a street confrontation in which the alleged provocation consisted of the utterance of "dirty words" and "ethnic slurs," did not justify a jury charge on passion/provocation manslaughter. However, nothing in Crisantos indicates that Powell would have been decided differently under the Code. See State v. Choice, 98 N.J. 295, 298, n. 3 (1985). To the contrary, the Court in Crisantos recognized that mutual combat may provide the requisite basis for a charge of passion/provocation manslaughter. 102 N.J. at 274.
*377 We consider the facts of this case to be similar in many respects to those in Powell and therefore we conclude that the trial court should have charged the jury as to passion/provocation manslaughter. Viewing the evidence most favorably to defendant, the jury could have concluded that the victim possessed a knife which she exhibited to defendant after the parties became involved in an argument. As in Powell, there was a struggle for possession of the weapon which resulted in the victim being stabbed. Moreover, the jury could have concluded, as in Powell, that defendant's continued stabbing of his wife resulted from his rage over the initial confrontation and struggle in which defendant had suffered cuts on his hands. See also State v. Crisantos, supra, 102 N.J. at 274.
For the foregoing reasons, the judgment of conviction is reversed and the case is remanded for a new trial.
NOTES
[1] A police officer testified that the knife was stuck in the victim's shoulder. This inconsistency in the testimony was not resolved and is immaterial to the issues on appeal.
[2] The discussion of this request occurred off the record. Therefore, the record is unclear as to precisely what form of manslaughter charge was requested.