**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5239-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MATTHEW D. ROLLE, a/k/a
DASHAUN CHEEKS,

    Defendant-Appellant.

_____

Submitted August 8, 2017 — Decided August 15, 2017

Before Judges Sabatino and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Salem County, Indictment No. 15-
07-0387.

Joseph E. Krakora, Public Defender, attorney
for appellant (Mark H. Friedman, Assistant
Deputy Public Defender, of counsel and on the
brief).

John T. Lenahan, Salem County Prosecutor,
attorney for respondent (Derrick Diaz,
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    Tried by a jury, defendant Matthew D. Rolle was found guilty

of two counts of second-degree aggravated assault, N.J.S.A. 2C:12-

1(b)(1), by causing and attempting to cause bodily injury to two separate victims, C.H. and C.H.'s mother, R.H.[1] The jury also found defendant guilty of two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), with respect to the same two victims. Lastly, the jury found defendant guilty of third-degree possession of a weapon (described as "a knife or machete type object") for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). The jury acquitted defendant of two charged counts of attempted murder.

After merging several of the convictions, the trial court imposed on defendant an extended-term custodial sentence of seventeen years for the aggravated assault of C.H., plus a consecutive custodial sentence of nine years for the aggravated assault of R.H. Both sentences are subject to the parole ineligibility consequences of the No Early Release Act, N.J.S.A. 2C:43-7.2 ("NERA"). The court further imposed a concurrent sixteen-month custodial sentence for the third-degree weapons conviction. In addition, the court imposed customary penalties and other conditions.

On appeal, defendant raises two points in his brief:

POINT I

---

[1] We use initials to protect the victims' privacy interests.

THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT THE PRIOR INCONSISTENT STATEMENTS MADE BY KEY WITNESSES WERE ADMISSIBLE AS SUBSTANTIVE EVIDENCE. (Not Raised Below).

POINT II

DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

We affirm.

The underlying offenses arise from an incident in which defendant, accompanied by two other men, physically attacked first C.H., and then R.H., on the evening of March 16, 2015 in Penns Grove. According to the testimony of the State's witnesses, C.H. and R.H. were passengers in a car. The car passed the three men, who were wearing dark hoodies, walking down the street outside of the residence of the driver's grandmother. C.H. asked the driver to turn the car around to see what was going on. As the car pulled up, C.H. recognized defendant, whom he had known for eight or nine years, and whom R.H. had taken care of for about two years.

According to C.H., defendant told him that he and the other men were waiting for "beats" from the car driver's brother.[2] C.H. told defendant to leave, and that he would not be getting any

_____

[2] As noted in C.H.'s testimony, the term "beats" apparently is slang associated in some manner with music.

"beats." C.H. got out of the car and began to talk with the two other men.

At that point, defendant struck C.H. multiple times in the back of his head and face with a hard object, causing C.H. to briefly lose consciousness. Meanwhile, R.H., having seen her son get hit, got out of the car and yelled at defendant to stop. At that point, defendant hit R.H. in the head with apparently the same hard object he had used to strike her son. R.H. fell to the ground and the three men ran away.

The car driver took C.H. and R.H. to a local hospital emergency room. Because of the nature of his injuries, C.H. was taken from the local hospital by helicopter to the trauma unit at Cooper Hospital in Camden. Meanwhile, R.H. was treated locally for an injury to her ear and then was driven to Cooper Hospital, where she remained for three days.

While being treated at the hospital, both C.H. and R.H. initially declined to speak with the police. According to C.H., he did not agree to be interviewed at that time because of his serious injuries. Those injuries included, among other things, a skull fracture and jaw fracture that were surgically addressed, and the insertion of a breathing tube. Surgeons wired C.H.'s mouth shut. R.H., who had a skull fracture and multiple lacerations herself, also initially declined to be interviewed by

the police because, as she later explained, she was more concerned at that time about her son.

On the day after the assaults, as her condition stabilized, R.H. gave an interview to the police. During that interview, she positively identified defendant as the attacker, who was subsequently charged and arrested. C.H. also eventually agreed to be interviewed by the police, providing them with information that supported defendant's arrest and prosecution.

At trial, the State presented testimony from both victims, who detailed the attacks and inculpated defendant. The State also presented testimony from various police witnesses who described the steps they took in the investigation. The investigation revealed copious amounts of blood on the sidewalk at the location of the reported attacks. The State also presented testimony from the attending trauma surgeon at Cooper Hospital. The surgeon recounted that C.H. had suffered multiple fractures of his face and jaw, a skull fracture, and a neck laceration. The doctor opined that those fractures were consistent with blunt trauma, of a kind that would occur when a person is hit with a hard object. The doctor also testified how he had treated R.H. for multiple lacerations, a skull fracture, and an intracranial hemorrhage.

Defendant did not testify on his own behalf, nor did he present any witnesses.

In his first point on appeal, defendant argues that the jury charge was incomplete, a contention he did not raise below. Specifically, defendant argues that the trial court should have instructed the jurors that the failure of both C.H. and R.H. to provide the police initially with statements incriminating him must be treated as substantive evidence in his favor. In particular, defendant contends that the victims' initial refusals to speak with the police, which his trial counsel brought out in cross-examination and in closing argument, amount to "prior inconsistent statements" admissible under N.J.R.E. 803(a)(1). He therefore claims these refusals to speak supports an evidential inference that defendant was not, in fact, the person who attacked them. Defendant maintains that, although it was not requested, the trial judge should have issued the model jury charge to the jury relating to the substantive use of prior inconsistent statements. See Model Jury Charges (Criminal), "Prior Contradictory Statements of Witnesses (Not Defendant)" (1994), http://www.judiciary.state.nj.us/attorneys/assets/criminalcharges/non2c019.pdf.

We evaluate defendant's newly-minted argument criticizing the jury charge under a plain error standard of review. R. 1:7-2; R. 2:10-2; State v. Singleton, 211 N.J. 157, 182-83 (2012). Under

that standard, an appellate court will not set aside a guilty verdict because of the omission of an unrequested jury charge unless the defendant on appeal demonstrates that the omission was "sufficiently grievous" and has a "clear capacity to bring about an unjust result." Ibid. (internal quotations omitted). We recognize, however, that when a jury instruction was clearly indicated by the trial record, such an omission is a "poor candidate" for the harmless error rule. State v. Weeks, 107 N.J. 396, 410 (1987) (citing State v. Warren, 104 N.J. 571 (1986); State v. Crisantos, 102 N.J. 265 (1986)).

Aside from its belated nature, defendant's argument about the victims' initial silence is fundamentally flawed on the merits. Defendant's appellate counsel attempts to draw analogies with situations in which a witness affirmatively gave an earlier narrative of events to the police but left out certain details that were later expressed in his or her trial testimony. By contrast, the present situation concerns two victims who initially declined to provide any statements whatsoever to the police. Their reluctance to do so, given what was occurring, is understandable.

C.H. was suffering from a serious brain injury and other medical traumas that required emergency surgery. He lost consciousness both at the scene of the attacks and again at the hospital. His jaw was wired shut. He certainly had a legitimate

reason to defer any interview with the police until he had sufficiently recovered to speak with them. Likewise, R.H., although she did not lose consciousness and did not undergo surgery, had more than ample reason to postpone an interview with the police while she was naturally concerned about the immediate welfare of her son.

Neither C.H. nor R.H. provided, by their temporary silence, any substantive prior inconsistent "statement" that warranted the special jury charge now being advocated by defendant. The cases cited in defendant's brief to support his argument are unavailing. For example, in State v. Hammond, 338 N.J. Super. 330 (App. Div.), certif. denied, 169 N.J. 609 (2001), we held that the model jury instruction on the substantive use of prior inconsistent statements was not warranted where the witnesses' pre-trial account did not involve "conflicting versions" of the events, but was instead a "mere blanket denial of any knowledge of the crime[.]" Id. at 342-43. As such, the witnesses' prior inconsistent statements lacked "any significant exculpatory value[.]" Id. at 343. None of the other cases cited by defendant compel a different result here. We therefore discern no error, much less plain error, in the omission of the jury charge.

II.

Defendant's second argument is that his aggregate twenty-six year custodial NERA sentence is unduly punitive. He further asserts that the sentencing judge did not adequately justify imposing consecutive sentences for the two aggravated assaults, and did not provide a sufficient analysis for relying in part on aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (deterrence). We disagree.

As the trial judge recognized, the imposition of consecutive sentences in this case are easily justified by defendant's brutal attacks upon two separate victims. State v. Yarbough, 100 N.J. 627, 634-44 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986). In addition, the judge did not abuse his discretion in imposing an extended custodial term pursuant to N.J.S.A. 2C:44-3. State v. Pierce, 188 N.J. 155, 166, 169-70 (2006) (applying an abuse-of-discretion appellate review standard to extended term sentences). Defendant clearly was eligible for an extended term as a persistent offender because of his adult criminal history, which included a litany of multiple offenses and violations of probation.

Moreover, although the judge conceivably could have been more specific in his explanation of why aggravating factor nine applied, the need to deter this defendant is manifest from record and requires no remand for further elaboration. Cf. State v. Fuentes,

217 <u>N.J.</u> 57, 75 (2014) (generally encouraging sentencing courts to specify their reasons for finding discrete aggravating and mitigating factors).  The aggregate sentence is appropriately lengthy for the very serious crimes that were committed, and do not "'shock[] the judicial conscience." <u>State v. Bieniek</u>, 200 <u>N.J.</u> 601, 612 (2010) (quoting <u>State v. Roth</u>, 95 <u>N.J.</u> 334, 364-65 (1984)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5239-15T4