**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0998-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SONG GUO QU,

    Defendant-Appellant.

_____

Argued September 14, 2020 - Decided October 13, 2020

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-12-1738.

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

Maura K. Tully, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Maura K. Tully, of counsel and on the brief).

PER CURIAM

Defendant Song Guo Qu appeals from a September 28, 2018 judgment of conviction for second-degree aggravated assault. We affirm.

We recite the facts based on the trial testimony. The victim and defendant previously worked together at a spa defendant owned and operated. The victim knew defendant as "A-Guo," but subsequently learned his real name, Song Guo Qu, from defendant's former girlfriend, Ann.[1]

The victim met Ann in 2014 while they both worked at defendant's spa. The victim testified that when he worked at defendant's spa, he "heard from other people . . . [t]hat [Ann] had a relationship with" defendant.[2] When asked how long defendant and Ann were in a relationship, the victim responded, "When I knew them, I knew that they were in a relationship, but a year ago when I met Ann again, Ann told me that they were not in a relationship a year or two before that time."

After ending her relationship with defendant, Ann opened her own spa in New Jersey. Because Ann's spa experienced financial difficulty, the victim

---

[1] We use a pseudonym to protect the identity of defendant's former girlfriend.

[2] Defense counsel objected to this statement as hearsay. The trial judge overruled the objection stating, "[I]t's his answer. It's not the question, so I will allow it."

A-0998-18T4

offered to help at her spa. The victim lived and worked at the spa starting on September 7, 2017. He also spent nights at the spa with Ann, and the two were intimate.

On September 10, 2017, defendant visited Ann's spa around five o'clock or six o'clock in the morning. Ann allowed defendant into the spa because they had a prior relationship and remained friends. The victim kept to himself while defendant was in the spa that day and described his relationship with defendant as a "boss and employee relationship." The victim briefly interacted with defendant while moving fitness equipment for Ann. The two chatted, and defendant asked the victim for his cell phone number, which the victim provided. Defendant left Ann's spa around eight o'clock at night.

That evening, defendant called the victim several times. However, the victim did not hear his phone ring. By the time he realized defendant had called, "it was very late" so the victim "did not reply."

The next morning, defendant returned to Ann's spa. She allowed defendant to enter the spa, and the victim overheard Ann and defendant arguing.

3

The victim heard defendant tell Ann, "I want to come in to hit [the victim]." The victim also heard defendant say he brought "a few people" with him.[3]

Defendant, along with three men, entered the victim's room. The victim testified the men hit him using "glassware," a metal stool, and a footstool. The victim indicated defendant and the man named Chief struck him the hardest but said "[i]n the beginning they all hit me at the same time." At one point, when defendant left the room, the assault temporarily ceased only to resume when defendant returned.

During the assault, defendant and Chief demanded the victim compensate defendant because the victim was intimate with Ann. They told the victim, "[T]his is [the] United States. If [we] beat you to death, nobody would know." Defendant also threatened to "cut [the victim's] private" if he "stay[ed] with [defendant's] woman."

Eventually, Ann ran from the spa. As a result, defendant and the other men focused their attention on Ann, and the victim escaped from the spa through a rear door. Ann and the victim found a taxi driver and called the police using the driver's cellphone.

---

[3] The victim subsequently learned the names of defendant's companions from Ann.

A-0998-18T4

Nicholas Caliendo, an attorney who worked near Ann's spa, testified during the trial. On the morning of the assault, Caliendo "heard some commotion across the parking lot," which he described as "[a]n exchange of a loud conversation more to the tune of yelling in a foreign dialect, which [he] would call Asian with a broad stroke." Caliendo saw a tall, Asian man exit a building located across the parking lot "holding something on his head and his [left] arm wasn't in its normal working location." Moments later, a woman emerged from the same building, joined the injured man, and they quickly walked "to a pocket park."

About ten seconds later, Caliendo saw men exit the same building, enter "a white caravan type vehicle" with New York license plates, and quickly leave the area. When he saw the police cars later that morning, Caliendo reported his observations to a detective at the scene.

Detective Sergeant Christopher Colaner testified for the State. According to Detective Colaner, upon arriving at the scene, the police officers noted the victim had "a large laceration to the top and back of his head, as well as . . . abrasions to his left side of his back, and he appeared to have swelling on his

5

left lower part of his arm."[4]

Detective Colaner obtained video surveillance footage from businesses near Ann's spa. The videos were admitted into evidence without objection by defense counsel. Detective Colaner then explained to the jury what was depicted in the videos and their relevance to the investigation.

Detective Colaner had a police dispatcher check the license plate for the white minivan and obtained defendant's driver's license number, address, and date of birth. He then contacted the New Jersey State Police, who in turn contacted the New York State Police, to obtain defendant's photograph and information confirming a white 2011 Toyota Sienna was registered to defendant. Detective Colaner identified the van as the same vehicle in the surveillance videos admitted into evidence. A warrant for defendant's arrest followed.

Several days later, Senior Corporal Douglas C. Young of the Delaware River Bay Authority Police Department arrested defendant in Delaware while he was traveling in a white Toyota Sienna minivan.

On December 19, 2017, defendant was indicted by a grand jury for second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and third-degree

---

[4] As a result of the assault, the victim received four stitches and staples for his head wound, suffered a fractured wrist, and bore permanent scars on his back.

A-0998-18T4

terroristic threats, N.J.S.A. 2C:12-3(a) or N.J.S.A. 2C:12-3(b). The matter was tried before a jury and the jury found defendant guilty of second-degree aggravated assault but not guilty of terroristic threats. The trial judge sentenced defendant to a term of five years, with the possibility of parole after serving eighty-five percent of his sentence in accordance with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following arguments:

POINT I

THE JURY INSTRUCTIONS ON ACCOMPLICE LIABILITY AND ATTEMPT WERE FATALLY FLAWED, DEPRIVING DEFENDANT OF DUE PROCESS AND A FAIR TRIAL (Partially Raised Below).

A: The Court's Accomplice Liability Charge Failed To Instruct The Jury That Two Or More Persons May Participate In The Commission Of An Offense With A Different State Of Mind And That Each Participant's Individual State Of Mind Determines That Participant's Liability.

B: The Court Provided A Single Definition Of Attempt To The Jury – Impossibility – Which Was Inapplicable And Erroneous, Depriving Defendant Of A Fair Trial.

POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO THE ERRONEOUS ADMISSION OF HEARSAY EVIDENCE.

7

A-0998-18T4

POINT III

DEFENDANT WAS PREJUDICED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY AS REQUIRED BY KOCIOLEK AND HAMPTON TO WEIGH AND CONSIDER WITH CAUTION [THE VICTIM]'S TESTIMONY ABOUT DEFENDANT'S ALLEGED, UNRECORDED, ORAL STATEMENTS DUE TO THE GENERALLY RECOGNIZED RISK OF MISUNDERSTANDING BY THE HEARER (Not Raised Below).

POINT IV

THE PROSECUTOR ELICITED IMPROPER LAY-WITNESS OPINION TESTIMONY THAT THE WHITE MINIVAN IN THE SURVEILLANCE VIDEOS WAS THE 2011 TOYOTA SIENNA REGISTERED TO DEFENDANT AND THAT IT CONTAINED MULTIPLE OCCUPANTS (Not Raised Below).

POINT V

THE TRIAL COURT ERRONEOUSLY GAVE THE JURY A FLIGHT CHARGE, PREJUDICING DEFENDANT.

A: There Was No Evidence That Could Reasonably Justify An Inference That Qu's Actions Were "Done With A Consciousness Of Guilt And Pursuant To An Effort To Avoid An Accusation."

B: The Flight Charge Was Not Appropriately Tailored to the Facts Of The Case And Was Confusing.

POINT VI

THE CUMULATIVE IMPACT OF THE ERRORS DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL (Not Raised Below).

A-0998-18T4

When a defendant alleges error in the jury charge, the charge must be reviewed as a whole. State v. Loftin, 146 N.J. 295, 379 (1996). We acknowledge that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Jordan, 147 N.J. 409, 421 (1997) (quoting State v. Green, 86 N.J. 281, 287 (1981)). Because an individual's liberty is at stake, "[e]rroneous instructions on matters or issues that are material to the jury's deliberation are presumed to be reversible error in criminal prosecutions." Id. at 422 (citing State v. Warren, 104 N.J. 571, 579 (1986)).

Where there is a failure to timely object to a jury charge, Rule 1:7-2 specifically provides that a showing of plain error must be made on appeal. State v. Ambroselli, 356 N.J. Super. 377, 381 (App. Div. 2003). Under Rule 2:10–2:

> [A]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial . . . court.

Plain error is established when the error, if any, had the capacity to result in the jury reaching a decision it might otherwise not have made. See State v. Funderburg, 225 N.J. 66, 79 (2016). Plain error in a jury instructions is an error that "prejudicially affect[s]" a defendant's substantial rights in a "sufficiently grievous" manner, which has the "clear capacity to bring about an unjust result."

State v. Afanador, 151 N.J. 41, 54 (1997) (quoting Jordan, 147 N.J. at 422).

"The mere possibility of an unjust result is not enough. To warrant reversal . . .

an error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether

the error led the jury to a result it otherwise might not have reached.'"

Funderburg, 225 N.J. at 79 (second alteration in original) (citation omitted)

(quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

A trial judge's evidentiary decisions are reviewed under an abuse of

discretion standard. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J.

369, 382 (2010). We have defined an abuse of discretion as a ruling which

"represents a manifest denial of justice," or where "clear error and prejudice are

shown." In re Estate of Lash, 329 N.J. Super. 249, 262 (App. Div. 2000)

(quoting Cty. of Essex v. Waldman, 244 N.J. Super. 647, 667 (App. Div. 1990));

DaGraca v. Laing, 288 N.J. Super. 292, 302 (App. Div. 1996) (quoting

Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 54 (App. Div.

1990)). Hearsay determinations are reviewed under this same standard. State

v. Brown, 236 N.J. 497, 521-22 (2019).

We first consider defendant's claim that the judge's instructions on

accomplice liability and attempt were flawed. Although defense counsel

objected to the judge giving the accomplice liability charge, once the judge ruled

the charged would be given to the jury, counsel did not object to the wording of the jury instruction, and thus, we review the matter for plain error.

"When a prosecution is based on the theory that a defendant acted as an accomplice, the trial court is required to provide the jury with understandable instructions regarding accomplice liability." State v. Savage, 172 N.J. 374, 388 (2002) (citing State v. Weeks, 107 N.J. 396, 410 (1987)). "By definition an accomplice must be a person who acts with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice." State v. White, 98 N.J 122, 129 (1984). We have held proper jury instructions on accomplice liability to be "'particularly important where multiple participants engage in a violent attack with the potential for differing states of mind.'" State v. Harrington, 310 N.J. Super. 272, 278 (App. Div. 1998) (quoting State v. Cook, 300 N.J. Super. 476, 486 (App. Div. 1996)). "In such cases, '[t]he liability of each participant for any ensuing crime is dependent on his own state of mind, not on anyone else's.'" Ibid. (quoting State v. Bridges, 254 N.J. Super. 541, 566 (App. Div. 1992), aff'd in part, rev'd in part on other grounds,133 N.J. 447 (1993)).

Under State v. Bielkiewicz, "when an alleged accomplice is charged with a different degree offense than the principal or lesser included offenses are

submitted to the jury, the court has an obligation to 'carefully impart to the jury the distinctions between the specific intent required for the grades of the offense.'" 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting <u>Weeks</u>, 107 N.J. at 410). The jury should be further instructed it could find the accomplice guilty of a lesser offense than the principal. <u>Id.</u> at 533. However, a trial court's failure to do so is not plain error if there is "no basis in the evidence to infer any difference in defendants' mental states." <u>State v. Norman</u>, 151 N.J. 5, 38 (1997).

Here, the evidence demonstrated defendant was the principal and intended to commit aggravated assault causing serious bodily injury when he entered the spa on September 11, 2017 and attacked the victim. Defendant knew the victim, had a motive for assaulting the victim, and defendant's three companions were strangers to the victim. In addition, defendant was tried alone so the jurors would not have been distracted from ascertaining defendant's mental state regarding the assault. The judge properly instructed the jury that principles of accomplice liability applied to the second-degree aggravated assault charge and the lesser-included offenses consistent with the requirements of <u>Bielkiewicz</u> and <u>Norman</u>. Under the circumstances, the jury charge on accomplice liability was not "clearly capable of producing an unjust result." <u>R.</u> 2:10–2.

A-0998-18T4

We also review the attempt charge for plain error based on defense counsel's failure to object to the charge. The judge properly instructed the jury using the language in the Model Jury Charge entitled "Attempt-Impossibility" rather than the alternative charge of "Attempt-Substantial Step." Model Jury Charges (Criminal), "Attempt (N.J.S.A. 2C:3-1)" (rev. June 15, 2009).

N.J.S.A. 2C:5-1(a) provides that a person is guilty of attempt if he or she:

> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
>
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

Section (a)(1) speaks to impossibility and section (a)(3) addresses substantial step.

We are satisfied the "Attempt-Substantial Step" charge was inapplicable based on the facts presented to the jury. It was undisputed the victim suffered serious bodily injury as a result of an assault. The only question was whether defendant or one of the three other men assaulted the victim. Thus, the

13

"substantial step" alternative jury charge did not apply. Even if there was an error in the jury instruction regarding "attempt," defendant failed to establish, "considered in the context of the entire charge and the evidence presented at trial, the error had 'a clear capacity to produce an unjust result.'" State v. Kornberger, 419 N.J. Super. 295, 300 (App. Div. 2011) (quoting R. 2:10-2).

We next consider defendant's challenge to the trial court's failure to sua sponte provide the Model Jury Charge on statements of defendant. According to defendant, even though he did not raise the issue to the trial court, it was plain error for the judge to not charge the jury regarding the statements he made to the victim consistent with State v. Hampton[5] and State v. Kociolek.[6] We disagree.

Here, the omitted instruction, commonly known as a Hampton/Kociolek charge, advises the jury its "function [is] to determine whether or not [any written or oral] statement was actually made by the defendant, and, if made, whether the statement or any portion of it is credible." Model Jury Charges (Criminal), "Statements of Defendant-Allegedly Made (Non 2C)" (rev. June 14, 2010). When a defendant's oral or written statements are introduced, trial courts

---

[5] 61 N.J. 250 (1972).

[6] 23 N.J. 400 (1957).

are mandated to give the instruction whether requested by defendant or not. Jordan, 147 N.J. at 425.

In Hampton, our Supreme Court held that when a defendant's confession to police is admitted in evidence, the judge shall instruct the jurors "that they should decide whether . . . the defendant's confession is true," and if they conclude "that it is not true, then they must . . . disregard it for purposes of discharging their function as fact finders." 61 N.J. at 272. "The failure of a court to give a Hampton charge, however, is not reversible error per se." Jordan, 147 N.J. at 425.

> It is reversible error only when, in the context of the entire case, the omission is "clearly capable of producing an unjust result . . . . " R. 2:10-2. That problem would arise most frequently when the defendant's statement is critical to the State's case and when the defendant has challenged the statement's credibility. If, however, the defendant's statement is unnecessary to prove defendant's guilt because there is other evidence that clearly establishes guilt, or if the defendant has acknowledged the truth of his statement, the failure to give a Hampton charge would not be reversible error.
>
> [Id. at 425-26 (alteration in original).]

The Kociolek charge pertains to the reliability of an inculpatory statement made by a defendant to any witness. See Kociolek, 23 N.J. at 421-23. A Kociolek charge need not be provided to the jury where "an alleged oral

A-0998-18T4

inculpatory statement was not made in response to police questioning, and there is no genuine issue regarding its contents, . . . because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement." State v. Baldwin, 296 N.J. Super. 391, 401-02 (App. Div. 1997). The failure to give a Kociolek charge is not plain error per se. Jordan, 147 N.J. at 428 (noting it would be "a rare case where failure to give a Kociolek charge alone is sufficient to constitute reversible error"). We have held that "[w]here such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." State v. Crumb, 307 N.J. Super. 204, 251 (App. Div. 1997) (citing Jordan, 147 N.J. at 428).

Here, the judge instructed the jury to determine the credibility of the witnesses. Defense counsel thoroughly and vigorously cross-examined the victim, testing his credibility before the jury. Further, defendant's guilt was not based solely on the victim's testimony regarding statements made by defendant. There was videotape evidence showing defendant's minivan arriving at Ann's spa around 6:30 in the morning and departing almost thirty minutes later with other passengers in the vehicle. In addition, the timing in the surveillance videotapes coincided with the 9-1-1 called placed by the victim and the

16

observations of a local attorney.  Based on the other evidence in this case, the judge's failure to give the <u>Hampton/Kociolek</u> charge sua sponte was not clearly capable of producing an unjust result.  <u>See</u> <u>State v. Setzer</u>, 268 N.J. Super. 553, 563-65 (App. Div. 1993) (holding the omission of a <u>Hampton</u> charge was not clearly capable of producing an unjust result when a general credibility charge was given).

We next review defendant's contention that the flight charge was erroneous, confusing, and not tailored to the facts in the case.  A flight charge "is appropriate when there are 'circumstances present and unexplained which…reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.'"  <u>State v. Latney</u>, 415 N.J. Super. 169, 175-76 (App. Div. 2010) (alteration in original) (quoting <u>State v. Mann</u>, 132 N.J. 410, 418-19 (1993)).  The circumstances need not constitute unequivocal proof of a consciousness of guilt, but it "must be intrinsically indicative of" such consciousness.  <u>State v. Randolph</u>, 228 N.J. 566, 595 (2017) (internal quotation marks omitted); <u>State v. Ingram</u>, 196 N.J. 23, 46 (2008).

The admission of evidence and recitation of a flight charge

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's

behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

[Latney, 415 N.J. Super. at 176 (emphasis omitted) (quoting Mann, 132 N.J. at 420).]

We review a trial court's decision whether to give a flight charge for abuse of discretion. See State v. Long, 119 N.J. 439, 499 (1990). We will only reverse upon finding the decision "was so wide of the mark that a manifest denial of justice resulted." State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

Having reviewed the record, there was sufficient testimony to support the flight charge. The judge noted the testimony of the witnesses who identified defendant's minivan leaving the scene of the spa after the victim's assault. In addition, at defense counsel's request, the judge included language in the flight charge advising the jury defendant had business ventures in other states as a possible explanation why defendant was in Delaware at the time of his arrest. Given the testimony and evidence presented during the trial, defendant failed to overcome his burden of demonstrating the judge's inclusion of the flight charge was an abuse of discretion.

Defendant next argues the judge erroneously allowed five hearsay statements by the victim. We review "evidentiary rulings" by a trial judge under an "abuse of discretion" standard. State v. Gorthy, 226 N.J. 516, 539 (2016). "Hearsay is not admissible except as provided by [the Rules of Evidence] or by other law." N.J.R.E. 802. Because defense counsel only objected to one of the five statements, we review that statement for abuse of discretion and the other four statements for plain error as well as abuse of discretion.

Defense counsel objected to the victim's testimony that he heard from others regarding Ann's dating relationship with defendant. The judge should have sustained the objection because the answer called for speculation. However, in the context of the trial testimony, such error was harmless because defendant and Ann had dated previously, and the testimony was not offered for the truth of the matter.

Regarding the other four statements, those statements similarly were not offered for the truth of the matter and therefore were not hearsay. The statements explained the victim's own actions and his understanding of the relationship between Ann and defendant. Having reviewed the record, we are satisfied the admission of these statements was not an abuse of discretion and

none of the statements to which defendant now objects were "clearly capable of producing an unjust result." R. 2:10-2.

We next review defendant's argument that the prosecutor elicited improper lay witness testimony regarding defendant's minivan seen in the surveillance videotapes. The admissibility of lay witness testimony is governed by N.J.R.E. 701, which states, "If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it: (a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." Our Supreme Court has held a testifying witness' "perception" includes knowledge acquired through "use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011) (citing State v. LaBrutto, 114 N.J. 187, 199-200 (1989)). While a police officer's training and experience is important, the admissibility of a police officer's testimony must turn on "the personal observations and perceptions of the lay witness in the traditional meaning of Rule 701." Id. at 459. The witness may not "convey information about what the officer 'believed,' 'thought' or 'suspected' . . . ." Id. at 460. An officer or lay witness is permitted to provide a "fact-based recitation" if he or she has "first-hand knowledge." Ibid.

A-0998-18T4

Defendant challenged Detective Colaner's testimony regarding the surveillance videotapes of the minivan. However, defense counsel did not object to the detective's testimony at the time of trial. In addition, the judge instructed the jury that their review and recollection of the evidence, including the videotaped evidence, would control. Further, the detective never testified he saw defendant in the minivan. Rather, he explained the route of travel taken by the minivan based on the surveillance footage and his personal observation of the videotape evidence. Thus, Detective Colaner did not offer improper opinion testimony.

Finally, defendant argues even if we find no individual errors warranting reversal, the "cumulative impact" of the errors resulted in the denial of due process and a fair trial warranting reversal. See State v. Jenewicz, 193 N.J. 440, 473 (2008) (citing State v. Kosovich, 168 N.J. 448, 340 (2001)). ("We have recognized in the past that even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal."). However, because we conclude there were no reversible errors, defendant's cumulative error argument must fail.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0998-18T4